THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHNNY WHITLOW, DEFENDANT-APPELLANT.

Argued March 1, 1965—Decided June 1, 1965.

*Mr. Marvin D. Perskie* argued the cause for defendant-appellant (*Messrs. Perskie & Perskie,* attorneys).

*Mr. William J. Hughes,* First Assistant Prosecutor, argued the cause for respondent (*Mr. James A. O'Neill,* Prosecutor of Cape May County, attorney).

The opinion of the court was delivered by

FRANCIS, J.   Defendant Johnny Whitlow was indicted for the murder of Theodore Gantry in Cape May County on November 28, 1964. On December 11, 1964 he entered a plea of not guilty at which time his attorney informed the court that the plea was being entered because Whitlow was mentally incompetent to stand trial, and also because he was insane at the time of commission of the alleged crime. See *State v. Auld,* 2 *N. J.* 426, 435 (1949).

It appearing that Whitlow had been examined on December 5, 1964 by a psychiatrist of his own selection, the prosecutor sought an order from the court for a similar examination on behalf of the State. At the argument of the application defense counsel opposed the grant of such an order saying he would instruct defendant not to cooperate with the State psychiatrist which would make the examination a "waste of money." Part of the colloquy between the court and the attorney follows:

"THE COURT: You are asking the Court to make an inquiry as to whether this man is competent to stand trial?

MR. PERSKIE: Yes, I will present psychiatric testimony to assist the court.

THE COURT: But, at the same time you don't want the State to prepare themselves that way for the same thing.

MR. PERSKIE: That's right. They can look and observe, but there is no compulsion on the part of the defendant to cooperate with their psychiatrist."

The subject of defendant's cooperation in a psychiatric examination was re-argued a short time later after briefs had been submitted. Thereafter the court entered an order directing defendant to submit to a mental examination by psychiatrists for the State, to "answer any and all questions asked of him [by them] which they may deem relevant to their exami-

nation," and to "otherwise cooperate * * * in order that [they] may be enabled to inquire into the defendant's mental condition." For future guidance we suggest that such an order more specifically define the twofold scope of the examination, *i. e.,* (1) to determine whether defendant is suffering from a mental illness or condition which prevents him from comprehending his position and from consulting intelligently with counsel in the preparation of his defense, and (2) to determine whether defendant at the time of commission of the crime was suffering from a mental illness which under established principles of law would warrant acquittal or justify conviction of a lesser degree of crime. *State v. Cook,* 43 *N. J.* 560, 570–571 (1965) ; *State v. Di Paolo,* 34 *N. J.* 279, 294–295, *cert.* denied 368 *U. S.* 880, 82 *S. Ct.* 130, 7 *L. Ed. 2d* 80 (1961) ; *Aponte v. State,* 30 *N. J.* 441, 450 (1959) ; *State v. Mount,* 30 *N. J.* 195, 215–224 (1959) ; *Winn v. United States,* 106 *U. S. App. D. C.* 133, 270 *F. 2d* 326 (*D. C. Cir.* 1959), *cert.* denied 365 *U. S.* 848, 81 *S. Ct.* 810, 5 *L. Ed. 2d* 812 (1961).

On the occasion of this second argument defendant not only objected to an order requiring cooperation in the examination, but also requested that his attorney be present if the examination were ordered. Permission for the attorney's presence was denied. The order, however, forbade disclosure of the results of the examination by the State psychiatrists to anyone for the defense or for the State until further order of the court. This restraint was designed to protect and preserve, pending appeal, defendant's objection that the order to cooperate with the examining physicians violates his privilege against self-incrimination under the Fifth Amendment of the United States Constitution and under *N. J. S.* 2A:84A–17, *Rule* 23(1) ; *N. J. S.* 2A:84A–19, *Rule* 25.

On December 16 defendant was examined on behalf of the State by two psychiatrists. He fully cooperated in the examination. Neither his counsel nor his psychiatrist was present. Thereafter defendant applied for leave to appeal from the order allowing the examination, supporting the application

by an affidavit reciting that during the course of their psychiatric study, the State's doctors questioned him at length about the circumstances of the killing. Leave to appeal was granted and the stay of delivery of the report was continued. At our direction, after argument of the appeal, the report was delivered to this Court, perusal thereof being limited to us.

The appeal presents problems largely of novel impression in New Jersey. They are: (1) in criminal cases where the defendant pleads inability to stand trial because of mental incompetence, or that he is innocent of criminal blame because he was insane at the time of the alleged offense, is his right to freedom from self-incrimination invaded by a court order authorizing his examination by State psychiatrists and directing him to answer their questions relating to the commission of the crime, if in their opinion such questions and answers are necessary to the formulation of an opinion on either or both of the issues of mental competence; (2) whether the refusal to allow defense counsel to be present at the examination violates defendant's right to have the assistance of counsel in his defense, under the Sixth Amendment of the Federal Constitution, and *Article* I, *Paragraph* 10 of the New Jersey Constitution.

I.

When a defendant charged with crime pleads mental incapacity to stand trial or innocence by reason of insanity, obviously expert medical opinion is necessary both for the defendant and for the State. Although lay testimony as to insanity might be admissible, it is unlikely in the extreme that exclusive reliance would ever be placed on it. In the usual situation when counsel advises the State or the court of his client's mental incapacity for trial or for criminal responsibility, it may be assumed that defense psychiatrists have already examined defendant and furnished an expert opinion supporting the statement. (Of course, if defense counsel has reasonable ground to believe defendant is insane or

was at the time of commission of the alleged offense, and the defendant is indigent, the trial court on application would undoubtedly authorize the selection of a psychiatrist to make an examination at public expense. Even in the absence of a statute, such action would be within the inherent power of the court. *Cf. State v. Butler,* 27 *N. J.* 560, 599–601 (1958).) In such case manifestly the State should be permitted to have a similar examination made by psychiatrists of its choosing. It would be most anomalous to say that a defendant may advance the defense of insanity, have himself examined by his own experts and then invoke the constitutional guarantees against self-incrimination for the purpose of preventing examination by the State. *State v. Myers,* 220 *S. C.* 309, 67 *S. E.* 2d 506, 32 *A. L. R.* 2d 430 (*Sup. Ct.* 1951). It would be a strange doctrine, indeed, to permit a person charged with crime to put in issue his want of mental capacity to commit it, and in order to make his plea invulnerable, prevent all inquiry into his mental state or condition. *State v. Cerar,* 60 *Utah* 208, 207 *P.* 597, 602 (*Sup. Ct.* 1922). To allow the accused to obtain his own expert, and after a private and unlimited conference with him and examination by him, to plead insanity, and then put forward the privilege against self-incrimination to frustrate like activities by the prosecution is to balance the competing interests unfairly and disproportionately against the public. Most states through their legislatures have sought to achieve a proper balance by authorizing or requiring psychiatric examination of persons charged with crime when the appropriate court has learned of their insanity or claim of it. See Annotation, 32 *A. L. R.* 2d 434 (1953); Note, "Pre-Trial Mental Examination and Commitment; Some Procedural Problems in the District of Columbia," 51 *Geo. L. J.* 143 (1962).[1]

---

[1] At least 30 states and the District of Columbia permit or require examination of an accused when want of mental capacity to stand trial or the defense of insanity is raised or comes to the court's attention. *Ala. Code tit.* 15, §§ 425, 426 (1940); *Ark. Stat. Ann.,* §§ 43–1301–1302 (*Supp.* 1963); *Cal. Pen. Code,* § 1027; *Colo. Rev.*

In New Jersey the Legislature has provided statutory procedure for inquiry by the County Court or Superior Court to determine the sanity of a person in confinement under arrest or indictment for crime. *N. J. S.* 2A:163-2. The statute referred to contemplates institution of the proceedings by

*Stat. Ann.*, § 39-8-2 (1953) ; *Fla. Stat. Ann.*, §§ 917.01-917.02 (*Supp.* 1961) ; *Hawaii Rev. Laws*, § 258-36 (1955) ; *Ill. Ann. Stat.*, ch. 38, § 104-2 (*Smith-Hurd* 1964) ; *Ind. Ann. Stat.*, § 9-1702 (1956) ; *Ky. Rev. Stat. Ann.*, § 203.340 (1962) (habitual offenders) ; *La. Rev. Stat. Ann.*, § 15:268 (1950) ; *Me. Rev. Stat. Ann.*, *ch.* 149, § 17-A, 17-B (*Supp.* 1963) ; *Md. Ann. Code* art. 59, § 7 (1957) ; *Mass. Gen. Laws Ann.*, *ch.* 123, §§ 100-100A (1959) ; *Mich. Stat. Ann.*, § 28.967 (1954) ; *Mo. Ann. Stat.*, § 552.030 (*Supp.* 1963) ; *N. H. Rev. Stat. Ann.*, § 135.17 (1955) ; *N. J. S.* 2A:163-2 (1951) ; *N. Y. Code Crim. Proc.*, § 658-662; *N. C. Gen. Stat.*, § 122-91 (Replacement Volume 1964) ; *N. D. Cent. Code*, §§ 29-20-01 to 29-20-05 (1960) ; *Ohio Rev. Code Ann.*, §§ 2945.37, 2945.40 (*Baldwin* 1961) ; *Pa. Stat. Ann. tit.* 50, §§ 1222-1225 (1959) ; *S. C. Code*, § 32-969 (1962) ; *S. D. Code*, § 34.20A01 (*Supp.* 1960) ; *Tenn. Code Ann.*, § 33-513(5) (*Supp.* 1959) ; *Tex. Code Crim. Proc. art.* 932b (*Supp.* 1958) ; *Utah Code Ann.*, § 77-24-17 (1953) ; *Vt. Stat. Ann.*, *tit.* 13, § 4803 (1958) ; *Va. Code Ann.*, § 19.1-228 (*Replacement Volume* 1960) ; *W. Va. Code Ann.*, § 6198 (*Supp.* 1961) ; *Wis. Stat. Ann.*, § 957.27 (*Supp.* 1961) ; *Wyo. Stat. Ann.*, §§ 7-240 to 7-242 (1957) ; *D. C. Code Ann.*, § 24-301(a) (1961) and *Fed. R. Crim. P.* 28 and 18 *U. S. C.*, § 4244; and, see, *Model Penal Code*, § 4.05-07 (Proposed Official Draft 1962).

Some examples of the types of statutes in vogue are:

ALABAMA—Authorizes preliminary examinations and then commitment to the state hospital for further study where reasonable basis for mental incapacity appears. Written reports delivered to judge and made available to prosecutor and defense.

ARKANSAS—Directs mandatory commitment to state hospital for examination and written report. Prosecutor and defense may have additional examinations made at hospital. Report of hospital goes into evidence, but all examiners may testify as well.

CALIFORNIA—Court appoints 2 or 3 alienists to examine and testify when called. State and defense may engage own experts also.

FLORIDA—Authorizes appointment of one or more disinterested experts to examine and testify at trial. Apparently called and questioned by court and cross-examined by prosecutor and defense.

HAWAII—Authorizes examination by state hospital and two disinterested physicians. Report to judge but available to prosecutor and defense.

INDIANA—When defendant gives required notice of insanity defense, two or three disinterested doctors appointed by court to examine and

presentation to the court of an application by the prosecutor or relatives or other interested persons, supported by the certificates under oath of two physicians who have made examinations and who certify as to the accused's mental incapacity and need for commitment. See *N. J. S. A.* 30:4–27 to 30. On receipt of such papers the court may conduct a hearing in open court, with or without a jury, and take the

testify. They are not to be called, however, until after defense and state doctors have testified. Thereafter state and defense may offer rebuttal.

KENTUCKY—Habitual offender subject to mandatory examination by Department of Mental Health. Report to judge; copy to prosecutor and defendant.

LOUISIANA—When insanity at time of crime an issue, court may appoint 1 to 3 disinterested doctors to examine; their names to be given to state and defense. The doctors shall be summoned to testify and may be cross-examined by state and defense. State and defense may use and call their own psychiatrists also.

MASSACHUSETTS—Person indicted for capital offense or who is a habitual criminal shall be examined before trial by Department of Mental Health. Others charged with lesser offense may be examined. Report filed with clerk of court and available to court, prosecutor and defense. "In the trial of an indictment or complaint for any crime, no statement made by a defendant therein subjected to psychiatric examination * * * shall be admissible in evidence against him on any issue other than that of his mental condition, nor shall it be admissible in evidence against him on that issue if such statement constitutes a confession of guilt of the crime charged." *Mass. Gen. Laws Ann.*, ch. 233, § 23B (*Supp.* 1958).

MISSOURI—After notice of plea of insanity, court on motion of either state or defendant may appoint one or more physicians to examine and report; copies to state and defendant. Five days after receipt of report state and defendant entitled to order granting examination by physician of their own choosing; copy of reports shall be given to court and opposing party.

SOUTH DAKOTA—When defendant pleads insanity, court shall require him to submit to examination by medical experts selected by the state. Court may also appoint other experts for same purpose.

UTAH—When defendant gives notice of intention to plead not guilty by reason of insanity, court must select two psychiatrists to examine. Either party may call them as witnesses; either party may engage independent examiners also.

VERMONT—When defendant pleads insanity or judge is convinced plea will be made at trial, he may order defendant into care of superintendent of state hospital for observation and examination, until

testimony of qualified psychiatrists as to the mental competency of the accused to stand trial. In appropriate cases also, it may determine the sanity of the accused at the time of commission of the offense. See *Aponte v. State, supra,* for an outline of the course of such proceedings; *cf. Farmer v.*

---

further order of the court, so "that truth or falsity of the plea may be ascertained."

WISCONSIN—Court may appoint one or more disinterested experts to examine and testify. "No testimony regarding the mental condition of the accused shall be received from witnesses summoned by the accused until the expert witnesses summoned by the prosecution have been given an opportunity to examine and observe the accused, if such opportunity shall have been seasonably demanded." *Wis. Stat. Ann.,* § 957.27(2) (*Supp.* 1961).

WYOMING—When plea of insanity made, court shall order commitment of defendant to state hospital or other hospital for observation and examination by the staff doctors and such others as either state or defendant may employ. Either side may call the examiners, subject to the rules of evidence.

DISTRICT OF COLUMBIA—Court may cause accused to be examined by at least one psychiatrist who shall report to the court. Accused may be committed for reasonable period for the purpose.

*Model Penal Code,* § 4.05 (Proposed Official Draft 1962)—Whenever defendant has filed notice of intention to rely on mental disease or defect, or fitness to proceed is doubted, or reason to believe mental disease or defect will become an issue, court shall appoint a psychiatrist or accept designee of superintendent of public hospital to examine and report. Accused may be committed for 60 days or longer for the purpose. Report of examination filed with clerk of court; copies to prosecutor and defense. Court may direct that defendant's psychiatrist may witness and participate in examination.

It should be noted that subsection (2) of section 4.05 authorizes the use in such examinations of "any method which is accepted by the medical profession." The comment (which is found in *Model Penal Code, Tentative Draft No. 4* (1955), *p.* 196) to the subsection simply states the purpose is to "clarify the question of what methods may be used in the examination." It seems likely that the many psychological and medical tests normally employed were meant. In *People v. Esposito,* 287 N. Y. 389, 39 N. E. 2d 925, 142 A. L. R. 956 (*Ct. App.* 1942) metrozal and sodium amytal were used, so-called "truth serums," and the results admitted where malingering was suspected. Reliability of such tests has been questioned. See *People v. Ford,* 304 N. Y. 679, 107 N. E. 2d 595 (*Ct. App.* 1952) ; *Lindsey v. United States,* 237 F. 2d 893, 16 *Alaska* 268 (9 *Cir.* 1956) ; Dession, Freedman, Donnelly and Redlich, "Drug-Induced Revelation and Criminal Investigation," 62 *Yale L. J.* 315 (1953).

*State,* 42 *N. J.* 579 (1964). (Certain provisions are made for summary disposition of cases where immediate temporary commitment is necessary. *N. J. S. A.* 30:4–25, 26.1, 46.1. They need not concern us here.)

In the prosecution and defense of criminal cases it frequently happens that neither party seeks the type of hearing contemplated by the statute. The accused simply advises the court or the prosecutor that at the trial he will defend on the ground of insanity at the time of commission of the offense. In this situation the court, of course, has the power to have medical experts examine for the State or for the defendant, if he is indigent, and to report their findings to the party engaging them.

It is obvious, even to the layman, that in all probability a psychiatrist would require more than a mere physical examination of a defendant in order to reach a conclusion of his sanity or insanity. The very nature of the psychiatric study would seem to call for utterances or answers through conversation with the alleged incompetent. The psychiatric interview is the basic diagnostic tool. See Krash, "The Durham Rule and Judicial Administration of the Insanity Defense in the District of Columbia," 70 *Yale L. J.* 905, 918 (1961). The Legislature gave consideration to the privilege against self-incrimination in the light of the need for conference between the psychiatrist and the accused, and ordained in *N. J. S.* 2A:84A–19, *Rule* 25:

"(a) [N]o person has the privilege to refuse to submit to examination for the purpose of discovering * * * his physical or mental condition."

In recent years when statutes requiring or permitting court order for psychiatric examination of an accused have been attacked as transgressing the privilege against self-incrimination, the attacks have been rejected uniformly. See comments to § 4.05, *Model Penal Code, Tentative Draft No. 4* (1955), *p.* 196; Note, *supra* (51 *Geo. L. J.,* at *pp.* 145–146); Annotation, *supra* (32 *A. L. R. 2d,* at *pp.* 441, 444, 450); *State v.*

*Grayson,* 239 *N. C.* 453, 80 *S. E.* 2d 387 (*Sup. Ct.* 1954); *Castro v. People,* 140 *Colo.* 493, 346 *P.* 2d 1020 (*Sup. Ct.* 1959); *State v. Myers,* 220 *S. C.* 309, 67 *S. E.* 2d 506, 132 *A. L. R.* 2d 430 (*Sup. Ct.* 1951); *People v. Spencer,* 60 *Cal.* 2d 64, 31 *Cal. Rptr.* 782, 383 *P.* 2d 134 (*Sup. Ct.* 1963); cf. *French v. District Court, Division* 9, 152 *Colo.* ——, 384 *P.* 2d 268 (*Sup. Ct.* 1963).

The scope of judicial sanction of these statutes is not clear. Plainly the results of the ordinary physical and psychological tests (as distinguished from truth serums and the like), including such interrogation as is necessary to determine mental capacity, are admissible. *United States ex rel. Daverse v. Hohn,* 198 *F.* 2d 934 (3 *Cir.* 1952), *cert.* denied 344 *U. S.* 913, 73 *S. Ct.* 336, 97 *L. Ed.* 704 (1953); *People v. Spencer, supra; Early v. Tinsley,* 286 *F.* 2d 1 (10 *Cir.* 1960), *cert.* denied 365 *U. S.* 830, 81 *S. Ct.* 717, 5 *L. Ed.* 2d 708 (1961); *People v. Esposito, supra; State v. Livingston,* 233 *S. C.* 400, 105 *S. E.* 2d 73 (*Sup. Ct.* 1958); *State v. Myers, supra;* Annotation, *supra* (32 *A. L. R.* 2d, at pp. 444–447); Note, *supra* (51 *Geo. L. J.,* at pp. 145–156); *Inbau, Self-Incrimination* (Charles C. Thomas 1950), *pp.* 55–57. The difficult question is whether inculpatory statements or confessions of the accused respecting the crime charged, made during the psychiatric interview and examination may be introduced in evidence. Where it appears at the trial that the conversations with the doctors were necessary to enable them to form an opinion either as to mental capacity to stand trial (where it is in issue) or to commit the crime, such statements or confessions are admissible. Their function or probative force, however, is limited to the sanity issue and may not be used as substantive evidence of guilt. See *State v. Lucas,* 30 *N. J.* 37, 79 (1959); *Hall v. State,* 209 *Ark.* 180, 189 *S. W.* 2d 917 (*Sup. Ct.* 1945); *People v. Spencer, supra; French v. District Court Division* 9, *supra* (384 *P.* 2d, at p. 270). Such statements have been made competent for this restricted purpose by a number of the statutes above referred to. See, *e. g.,* Mo. *Ann. Stat.,* § 552.030(4) (*Supp.* 1963);

*Ill. Ann. Stat.,* ch. 38, § 104-2 (Smith-Hurd Supp. 1964); 18 *U. S. C. A.* § 4244; *Model Penal Code, supra,* § 4.09 (Proposed Official Draft); see comments to § 4.09, *Tentative Draft No. 4* (1955), *p.* 201.

In our judgment a rule which requires a defendant who pleads mental incapacity to stand trial or legal insanity at the time of the crime, to submit to a psychiatric examination and to answer all questions deemed necessary by the examiner to enable him to form an expert opinion on the issues, is valid constitutionally so long as it is subject to the qualifications outlined above. An accused who asserts lack of criminal guilt because of insanity and who fully cooperates with psychiatrists engaged by him for examination purposes, answering all questions put to him including those relating to the crime itself, ought not to be allowed to frustrate a similar comprehensive examination by the State by asserting the bar against self-incrimination. He ought not to be able to advance the claim and then make the rules for determination of the claim. *Cf.* Comment, "The Self-Incrimination Privilege: Barrier to Criminal Discovery?," 51 *Cal. L. Rev.* 135 (1963).

But what if the defendant, after fully preparing his own case on insanity with the aid of psychiatrists of his own choosing, stands mute when the State's doctors, pursuant to court order, attempt examination, or cooperates fully in the psychiatric interview except when questioned about the crime itself? If the defendant stands mute, in the absence of discovery of some mental disease which manifests itself objectively, the examination would undoubtedly be worthless. It might be that cooperation in the interview, short of discussion of the crime itself would suffice for expert opinion forming purposes in a substantial number of cases. But it is plain from the many cases in the reports that discussion about the offense between the doctors and the accused is regarded by them as relevant, helpful and in most instances necessary to a professional determination of his sanity. This observation appears to be particularly true where the psychiatrist is

called upon to report whether the defendant has the capacity to go to trial, *i. e.*, whether he is suffering from a mental illness or condition which prevents him from comprehending his position, and from consulting intelligently with his counsel in the preparation of his defense. What, if any, sanctions can be imposed upon a recalcitrant defendant (assuming the court is satisfied the recalcitrance is not the product of an insane mind), or what, if any, procedural conditions can be imposed upon the presentation of his insanity defense?

Solution of the problem must be approached with an awareness that under our present practice a defendant who interposes the defense of insanity has a private examination and interview with his chosen psychiatrist. This is true whether defendant is able financially to engage the examiner or because of indigency the court appoints him on defendant's selection. In the course of the examination, with rare exceptions, an exhaustive history is given by defendant (and frequently others), and utilized by the psychiatrist in making his evaluation of mental competency. Such history is hearsay and given to enable the examiner to testify at the forthcoming trial or sanity hearing. Without it, in the great majority of cases, the examination would be futile. We know also in the ordinary civil personal injury case, for example, that where an examination is made to qualify the doctor as an expert witness and not for purposes of treatment, the history received by him is not admissible at the trial. Of course, if the history is introduced in evidence through original sources, such as the defendant himself, or other persons with personal knowledge, it may be incorporated in a hypothetical question, and the expert's opinion obtained in that stilted and rather artificial fashion. See *Bober v. Independent Plating Corp.*, 28 *N. J.* 160, 170–172 (1958). If, however, the injured person does not testify and he is the only source of the history which the examiner requires as the basis for his opinion, strict adherence to the hearsay rule ordinarily would bar its admission.

There seems to be a tendency elsewhere in insanity cases to allow the defense psychiatrist to recount the full history obtained from the defendant regardless of its hearsay or self-serving quality, so long as the doctor regards it as essential to the formulation of his expert opinion. If he so regards the history, the test of admissibility is satisfied. The thesis is that such conversations with and statements by the defendant, whether or not they relate to the crime itself, are verbal acts; circumstantial evidence for or against the claim of insanity. They do not come in as evidence of the truth of the facts asserted but rather, and only, as part of the means employed by the doctor in testing the accused's rationality, mental organization and coherence. They are object-like factors used to ascertain mental abnormality or the reverse. For example, the defense psychiatrist was allowed in *People v. Modesto,* 59 *Cal. 2d* 722, 31 *Cal. Rptr.* 225, 382 *P. 2d* 33 (1963), to testify fully as to the conversations with defendant, including his statements about the criminal acts. In addition the California Supreme Court declared it was error to refuse to allow the doctor to explain the use of hypnosis as an analytical tool, and to exclude a tape recording of statements made by defendant while under hypnosis. 382 *P. 2d,* at *p.* 39. See, also, Dieden and Gasparich, "Psychiatric Evidence and Full Disclosure in the Criminal Trial," 52 *Cal. L. Rev.* 543 (1964), where the authors aptly suggest: "The effectiveness of any psychiatric testimony hinges on the ability of the expert to learn as much as possible about the mental condition of the accused and to present this information to the court and jury in explanation and support of his diagnosis." *id.,* at *p.* 544

If, as can be persuasively argued regardless of hearsay rules, defense psychiatrists ought to be allowed the widest latitude in their search for material which will enable them most advantageously to employ their expertise in reaching an opinion as to defendant's criminal responsibility, the State's psychiatrists also ought to be allowed for the same purpose to range over his entire life, including the circumstances surrounding the offense itself. Statements of the accused

about his crime which are verbal acts indicating sanity or lack of it, if admissible for one party ought to receive like treatment when offered by the other so long as the jury is fully and fairly informed as to the purpose of admitting them and the absolute limitation on their use. Absent such reciprocal treatment, departure from ordinary rules governing hearsay testimony clearly would be unjust.

Since no one questions that the psychiatric interview is a crucial diagnostic tool, the judicial aim must be to make it an effective instrument of justice. How can this be accomplished and defendant's Fifth Amendment rights safeguarded when he has been arrested on a complaint or indictment charging homicide? A number of possible situations present themselves for consideration. First, assuming defendant has not yet been arraigned and the possibility of mental incompetency to stand trial or legal insanity at the time of perpetration of the killing is projected, what course should be taken? It must be kept in mind at this point that the closer the examination to the day of the crime, the more significant the diagnosis. If defendant is indigent and has no attorney, the appropriate court should appoint one for him immediately. See *Edmonds v. United States*, 104 *U. S. App. D. C.* 144, 260 *F. 2d* 474, 478 (*D. C. Cir.* 1958), *cert.* denied 362 *U. S.* 977, 80 *S. Ct.* 1062, 4 *L. Ed. 2d* 1012 (1960). Then defense counsel, whether appointed or privately engaged, should be given notice of an application (at a short date if necessary) by the State for designation of a psychiatrist to make an examination. At the argument of the motion the parties may authorize the court to select one or more impartial doctors to examine. Obviously a desirable objective in such matters is to eliminate as much as possible the so-called battle of experts at a hearing or trial. In the absence of such agreement, naturally the court would grant permission to the State for examination by its psychiatrist, and make a similar order for the defendant. By consent the examination could be made jointly by the experts of the parties' selection. But even

absent such consent, at defendant's request his psychiatrist should be allowed to attend the State's examination.

The order permitting examination for the State should result in full cooperation by the defendant. If, in the opinion of the examiner, it is necessary for the formulation of an opinion as to sanity to discuss the circumstances of the alleged crime, defendant should cooperate in good faith. As we have said, any inculpatory statements made by defendant in this context are not competent as admissions on the issue of guilt, and when introduced at the trial during the course of the doctor's testimony, the jury must be told so immediately, explicitly and unqualifiedly.

Upon submission of the State doctor's report, defendant may informally seek a copy of it from the prosecutor in exchange for a copy of the report of his own psychiatrist if the prosecutor wishes a copy. Otherwise defendant may seek a court order for delivery of a copy to him. *State v. Cook, supra* (43 *N. J.,* at *p.* 569). On such motion the court, in its discretion, may condition grant of defendant's motion on exchange of reports by both parties.[2]

If the defense of insanity is suggested at the arraignment or thereafter, substantially the same procedure as just outlined should be followed. In this connection, however, we make plain that if defendant intends to raise insanity as a

---

[2] See Report of New Jersey Supreme Court Subcommittee on Rules of the Committee on Criminal Procedure, April 2, 1965; Proposed Rule 3:5–11(b), (d) ; Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Second Preliminary Draft of Proposed Amendments to Rules of Criminal Procedure for the United States District Courts, March, 1964; Proposed Amended Rule 16(a), (c). Note that both proposed subsection (d) of the State Committee and subsection (c) of the Federal Committee are not as specific as they might be. The reference is to "reports" defendant intends to produce at the trial. Ordinarily the reports are not produced at the trial as physical evidence; the examining doctor is called as a witness. To avoid ambiguity of intention, these subsections should be made equal in scope to subsection (a)(2) of the Federal and (b)(2) of the State Committee reports.

defense at the trial, he should notify the State sufficiently in advance thereof to permit adequate psychiatric examinations.[3]

■■ We are aware of the force of the criticism advanced by some persons as to the difficulty of making a jury of laymen realize the full significance of an instruction by a trial court that they can consider inculpatory statements of an accused to an examining State psychiatrist only on the issue of insanity, and not at all on the issue of guilt. But reception of evidence for a limited purpose is not an uncommon or unsanctioned practice. And we accept, as we must, the fact that jurors can and do obey the court's restrictive instruction with

---

[3] Both committee reports referred to in footnote 2 propose a rule requiring such notice. Proposed Federal Rule 12.1; Proposed State Rule 3:5-9(e). The *Model Penal Code, supra* (Proposed Official Draft) not only requires such notice, but provides that evidence of mental disease or defect is not admissible in absence of such notice at time of entry of the plea or within 10 days thereafter, "or at such later time as the Court may for good cause permit." § 4.03(2); and, see comments thereon in *Model Penal Code, Tentative Draft No. 4, supra,* p. 194. A number of states have similar provisions for notice, *e. g., Ariz. Rules Crim. Proc.,* Rule 192 (1956); *Fla. Stat. Ann.,* § 909.17 (1943); *Iowa Code Ann.,* § 777.18 (1949); *Mich. Stat. Ann.,* § 28.1043 (1954); *Ore. Rev. Stat.,* § 135.870 (1961 *Replacement*); *Utah Code Ann.,* § 77-22-16 (1953). Others require insanity defense to be specially pleaded, *e. g., Ala. Code tit.* 15, § 423 (1958); *Cal. Pen. Code,* § 1016; *Colo. Rev. Stat. Ann.,* § 39-8-1 (1953); *Ind. Ann. Stat.,* § 9-1701 (1956 *Replacement Volume*); *Md. Ann. Code, art.* 59, § 7 (1957); *Wash. Rev. Code Ann.,* § 10.76.020 (1961); *Wis. Stat. Ann.,* § 957.11 (1958); *Wyo. Stat. Ann.,* § 7–240 (1957).

No federal court has passed upon the constitutionality of the requirement for notice or special pleading as a condition to proof of insanity at trial. Statutes barring the defense entirely in homicide cases have been declared unconstitutional. *Sinclair v. State,* 161 *Miss.* 142, 132 *So.* 581, 74 *A. L. R.* 241 (*Sup. Ct.* 1931); *State v. Strasburg,* 60 *Wash.* 106, 110 *P.* 1020, 32 *L. R. A., N. S.,* 1216 (*Sup. Ct.* 1910). Procedural requirements for notice of the defense have been sustained. *State v. Eisenhardt,* 185 *La.* 308, 169 *So.* 417 (*Sup. Ct.*), appeal dismissed 299 *U. S.* 512, 57 *S. Ct.* 49, 81 *L. Ed.* 378 (1936). Such conditions may be likened to the requirement for notice of the alibi defense. See *Jones v. Superior Court of Nevada County,* 58 *Cal.* 2d 56, 22 *Cal. Rptr.* 879, 372 *P.* 2d 919, 96 *A. L. R.* 2d 1213 (*Sup. Ct.* 1962); *cf. French v. District Court Division* 9, *supra.*

respect to such evidence. Moreover, criminal trial practice in our State in the ordinary case provides protection for the accused in addition to that given by the limiting jury instruction.

Since a defendant is presumed to be sane, the prosecutor first presents his case on the issue of guilt alone. Because of the presumption, no expert proof as to sanity is necessary before resting his main case. Then the defense proceeds with its proof of insanity at the time of commission of the homicide.

If the defendant calls his own examining psychiatrists in defense to prove insanity, there is no sound reason why as a matter of justice the door should not be considered open for the same type of testimony by the State's medical experts. This should be particularly true when, as is often the case, the defendant's statements to his own doctors are substantially the same as those he made to the examiners for the State. *Cf. State v. Reynolds,* 41 *N. J.* 163, 178–179 (1963).

If a defendant, who pleads insanity as a defense is in custody or at large on bail pending trial, refuses to permit any psychiatric examination on behalf of the State or declines to cooperate in the interview aspect of the examination to the extent deemed reasonably necessary by the examiner, what remedies are available to the State? In some jurisdictions the state has been permitted to prove such refusal at the trial. *Burgunder v. State,* 55 *Ariz.* 411, 103 *P. 2d* 256, 263 (*Sup. Ct.* 1940); *People v. French,* 12 *Cal. 2d* 720, 87 *P. 2d* 1014 (*Sup. Ct.* 1939). Recently expressed views of the United States Supreme Court, however, cast doubt on the validity of the rule. *Griffin v. State of California,* 380 *U. S.* 609, 85 *S. Ct.* 1229, 14 *L. Ed. 2d* 106 (1965); *Malloy v. Hogan,* 378 *U. S.* 1, 84 *S. Ct.* 1489, 12 *L. Ed. 2d* 653 (1964).

In jurisdictions having statutes like most of those described earlier in this opinion, the trial court, after notice to defendant, probably would commit him for a reasonable period to an appropriate state hospital for study, observation and report by the psychiatric staff.

The language of *N. J. S.* 2A:163–2, *supra,* prescribing the procedure to be followed to institute an inquiry into an accused's sanity, and of *N. J. S. A.* 30:4–25, 26.1 and 46.1, *supra,* relating to necessary immediate temporary commitment, is narrower in scope than most of the enactments in other jurisdictions. The New Jersey statutes appear to condition commitment, temporary or indefinite, on presentation of medical certificates based on examination indicating insanity. If an accused refuses examination or simply stands mute, and as a result the examiners cannot form an opinion on sanity, it is questionable whether a court could commit under the statutes cited. The limited nature of these laws is a matter for legislative consideration. Broadening their field of operation to correspond with the types extant in Arkansas, Hawaii, Massachusetts, South Dakota, Vermont, Wyoming and the District of Columbia, or the type proposed in the Model Penal Code would serve the cause of justice in criminal cases when the insanity defense is interposed. See footnote 1, *supra.* In any event, even in the absence of such a statute, our trial courts are not impotent in the matter. When an accused refuses to be examined or to submit to the kind of psychiatric interview deemed necessary by the State expert, and the defense attorney represents to the court that he intends to advance the issue of present insanity or insanity at the time of the alleged crime, we hold the view that the court has inherent authority to order commitment to a proper State institution for a temporary period of observation and study. In such case, of course, the defendant would be entitled to have his own psychiatrist re-examine him or attend at the institution at reasonable times to observe and inform himself about the study being made by the staff of the institution.

At the argument of the motion to commit, it would be proper and expedient to inquire of defense counsel if defendant had cooperated fully with his own examining psychiatrists, particularly with regard to history and the circumstances of the alleged offense. Such inquiry would not call for disclosure of his statements to them; simply whether there was or was

not a full psychiatric interview. If such unqualified cooperation is conceded and the court decides against commitment for observation, defendant should be informed that at the trial of the case the hearsay objection will be applied to exclude any history or statements as to the crime or otherwise, furnished by him to his psychiatrists during their interview and examination—unless and until the same cooperation is given to the State's examiners.[4] Then at the trial, if the accused testifies with respect to his mental condition or as to the circumstances of the crime, and then offers psychiatric testimony, the court may suspend the proceedings and refuse to receive such expert proof until defendant submits to a proper examination by the State's psychiatric experts. The defense doctors should be permitted to attend the examination if they wish.

We perceive the difficulties attending the State's effort to meet a claim of insanity, particularly at the time of trial where the allegation is offered to show lack of criminal responsibility for the offense. The State cannot be left helpless to meet the defense, and the imposition of reasonable conditions on its presentation ought not be deemed barred by the privilege against self-incrimination. In our judgment the following course does not offend the privilege:

1. At arraignment on the indictment or at some later time to be fixed by Supreme Court rule, but sufficiently in advance of trial to enable the State to prepare therefor, defendant should give notice to the State of his intention to advance the defense of insanity at the time of trial;

---

[4] The Wisconsin statute, *supra*, § 957.27(2), provides:
> "No testimony regarding the mental condition of the accused shall be received from witnesses summoned by the accused until the expert witnesses summoned by the prosecution have been given an opportunity to examine and observe the accused, if such opportunity shall have been seasonably demanded."

And, see Krash, *supra* (70 *Yale L. J.*, at *p.* 920); Note, *supra* (51 *Geo. L. J.*, at *p.* 154); *cf. Leland v. State of Oregon*, 343 *U. S.* 790, 72 *S. Ct.* 1002, 96 *L. Ed.* 1302 (1952).

2. The State has the right to a psychiatric examination; defense experts may be present;

3. If its experts can form an adequate opinion of the defendant's sanity by observation and physical examination alone, their action should be so limited;

4. If a psychiatric interview with defendant is required for the purpose, and an adequate opinion can be reached without inquiry into the circumstances surrounding the alleged criminal event, the interview should be so restricted;

5. If an adequate opinion cannot be formed without inquiry into the circumstances attending the alleged crime, the inquiry should be made. The defendant should cooperate therein fairly, unless he lacks mental capacity to do so. The evidentiary character of any inculpatory statements shall be limited expresssly to the claim of insanity, and shall not be admissible on the issue of guilt. The jury shall be so instructed as the testimony is offered, and again in the charge to the jury;

6. If a defendant is capable mentally of cooperating to the extent deemed necessary by the doctors, and he fails or refuses to do so, on motion of the State the defense psychiatric testimony shall be limited to the same extent;

7. On demand defendant is entitled to copies of the State's psychiatric examination reports subject to delivery to the State of copies of his own, if requested. (See New Jersey Supreme Court Committee report, *supra*, proposed Rule 3:5–11(b) and (d); Federal Committee report, *supra*, proposed Rule 16(a) and (c); *Jones v. Superior Court, supra* (122 *Cal. Rptr.*, at p. 882, 372 *P. 2d*, at p. 922).)

## II.

The final contention raised by defendant is that the trial court erred in refusing to allow his attorney to be present during the examination by the State psychiatrists. We cannot agree.

█ It is true, of course, that both Federal and State Constitutions give an accused the right to have the assistance of counsel in his defense. *U. S. Const.* Amend. VI; *N. J. Const., Art.* I, *par.* 10. A psychiatric examination is simply a necessary preliminary investigatory step to enable the State to decide whether to recommend acceptance of defendant's claim of insanity or to dispute it at trial. The limited privilege of the medical expert to inquire about the alleged crime itself, *i. e.*, only when necessary to the formation of an opinion on insanity, the sharply limited purpose for which any statements of the defendant may be used at the trial, provides sufficient safeguards against actual self-incrimination. Moreover, the right of the defendant to have his own psychiatrist present serves as a check against any improper or oppressive practice in the course of the examination.

In none of the statutes of the various jurisdictions mentioned in footnote 1 hereof is any provision made for the presence of counsel. This is worthy of considering as indicating that none of them felt absence of counsel is a factor which might thwart a fair trial. See *Leland v. State of Oregon, supra* (343 *U. S.,* at *pp.* 798, 799, 72 *S. Ct.,* at *p.* 1007, 96 *L. Ed.,* at *pp.* 1308, 1309); *People v. Lopez,* 60 *Cal. 2d* 223, 32 *Cal. Rptr.* 424, 384 *P. 2d* 16 (*Sup. Ct.* 1963), *cert.* denied 375 *U. S.* 994, 84 *S. Ct.* 634, 11 *L. Ed. 2d* 480 (1964). Moreover, in many of the reported cases it appears without significant criticism that psychiatric examinations were made prior to appointment of counsel for the defendant, or without the presence of counsel. See, *e. g., Early v. Tinsley, supra; Hughes v. United States,* 113 *U. S. App. D. C.* 127, 306 *F. 2d* 287 (*D. C. Cir.* 1962); *Edmonds v. United States, supra; State v. Livingston, supra; People v. Esposito, supra* (39 *N. E. 2d,* at *p.* 928).

█ Having in mind the nature of psychiatric examinations, the usual necessity for an extensive interview between the doctors and defendant, and the safeguards now established against use of possible inculpatory statements of the accused as substantive evidence of guilt, we see no absolute

duty on the trial court to permit the defense attorney to be present with his client; the matter rests in the court's discretion. If upon application by the State for leave to examine, defense counsel requests permission to be present at the examination, the court should require some showing by the prosecutor as to the attitude of the psychiatrists about the presence of counsel. Of course, if there is no objection, permission should be granted. (In such case, counsel should realize his attendance is in the capacity of an observer, not an active participant.) If, in their view the presence of such a nonprofessional would hinder or operate to reduce the effectiveness of their examination, or if they assert they cannot examine in his presence, the court may in the exercise of its discretion exclude counsel from the examination. In this event, if defendant requests, consideration may be given to the feasibility of permitting such devices as recording instruments or the like to be utilized at the psychiatric interview. In any case the court should allow a defense psychiatrist to attend the examination, if such a demand is made.

In the present case it appears that the psychiatrists engaged by the State indicated they could not conduct a satisfactory examination in the presence of nonprofessionals. Moreover, the court was advised that, although defendant is in custody awaiting trial, no representative of the State was present when his experts made their examination. Under all the circumstances we cannot conclude the trial court abused its discretion in declining to allow defense counsel to witness the State's examination.

In connection with the examination, however, some further observations should be made. As we have noted above, defendant says in his affidavit he was questioned at length by the State psychiatrists about the circumstances attending the alleged murder. The reports sent to us confirm this fact. We are returning them to the trial court where on proper application defendant and the State should be allowed copies. After perusing them, if defendant feels the need for further

examination by his own psychiatrists, he may make the necessary arrangements.

The reports do not state expressly that "it was necessary for the doctors to inquire about the alleged crime in order to express an opinion as to his sanity at the time it was committed." If defendant wishes he may move to expunge or suppress the portions containing references in any wise relating to the homicide. The State may obtain supplemental reports or affidavits from the examiners as to the reasons for their discussion of the matter with Whitlow. Copies shall be furnished to his counsel. The matter may then be dealt with by agreement of the parties or on formal motion by the court.

▮ Delivery of copies of the existing psychiatric reports to the prosecutor shall be made with the restriction that no use whatever shall be made of the defendant's discussion of the circumstances surrounding the homicide by way of further investigation or preparation for trial beyond any necessary conferences with the examiners on the insanity aspect of the case. Nor shall such parts of the reports, or the facts appearing therein, be utilized in any manner at the trial unless the defense of insanity is in fact presented and defendant's psychiatrists testify with respect to it. After handing over copies of the reports to defendant, the State may apply to the court for an order requiring defendant to furnish copies of reports of his examiners.

### III.

For the reasons stated, and subject to the admonitions and limitations expressed, the order of the trial court requiring defendant to submit to the psychiatric examination and to cooperate therein with the State's experts, is affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For reversal*—None.