689 A.2d 860

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
KRISTINA BURRIS, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 26, 1997—Decided March 20, 1997.

506

Before Judges SHEBELL and BAIME.

*Stephen W. Kirsch,* Assistant Deputy Public Defender, argued the cause for appellant (*Susan L. Reisner,* Public Defender, attorney; *Mr. Kirsch,* of counsel and on the brief).

*Deborah Bartolomey,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General, attorney; *Ms. Bartolomey,* of counsel and on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

This case comes before us for the second time. Following a jury trial, defendant was convicted of murder (*N.J.S.A.* 2C:11–3a(1) and (2)) and was sentenced to thirty years without parole eligibility. She appealed, contending: (1) the prosecutor was improperly permitted to impeach her testimony by confronting her with her custodial statements made after invoking her Fifth Amendment right to counsel, (2) the trial court violated her privilege against self-incrimination by compelling her to testify or forfeit the right to present psychiatric testimony, and (3) evidence of her "bad character" was erroneously admitted. We reversed

defendant's conviction in an unreported opinion, holding that the failure to honor her previously invoked right to an attorney barred the State from using her statement to impeach her credibility. The Supreme Court granted certification, reversed our judgment, and remanded the matter for consideration of defendant's remaining contentions. *State v. Burris*, 145 *N.J.* 509, 679 *A.*2d 121 (1996). We now hold that the trial court committed reversible error by conditioning defendant's right to present psychiatric evidence upon her taking the stand and testifying. In the unique circumstances of this case, the trial court's erroneous evidentiary decision compelled defendant to testify and violated her right to remain silent.

## I.

We need not recount the facts at length, because they are fully recited in the Supreme Court's opinion. Defendant broke into the home of her mother and shot and killed her. Defendant then took her mother's car and credit card and went on a shopping spree. Later that day, defendant paid for an evening at a hotel with her boyfriend. Several days after the killing, the police entered the home of the victim and found her prone body with a plastic bag over her head. Defendant was arrested shortly thereafter. In a brief period, defendant gave the police three wildly inconsistent statements, ranging from a complete denial of any knowledge of the circumstances surrounding her mother's death to a qualified admission that she was present when a companion fired the fatal shot.

The defense at trial was that of accident. Specifically, the defense attempted to show that defendant accidentally fired the gun while engaged in a heated argument with her mother. It is fair to suggest that, in the absence of defendant's testimony, the proofs supporting this theory were extremely weak, consisting mainly of scattered bits of evidence found at the scene of the homicide.

Perhaps the most difficult problem confronting the defense's theory of accident was how to explain the cool and calculated manner in which defendant stole her mother's car and used her credit card after the killing. From the very outset of the trial, the State contended that such conduct was inconsistent with the hypothesis of innocence. In order to rebut the State's contention, the defense retained two expert witnesses, Dr. Frank Dyer, a clinical psychologist, and Dr. Robert Latimer, a psychiatrist. Prior to trial, a hearing was conducted to determine the admissibility of their testimony. The gist of their testimony was that defendant suffered from histrionic personality disorder. The witnesses agreed that defendant's condition would have no impact upon her ability to form an intent to kill or upon her legal responsibility for her conduct. It would, however, explain her calm demeanor following the shooting. They explained defendant's post-shooting conduct in terms of "hypomanic flight," essentially a behavior defense mechanism that denies the reality of traumatic events. Although both experts engaged in clinical interviews with the defendant, their opinions were based primarily on test results and personality features. While Dr. Dyer and Dr. Latimer made reference to what was told to them by defendant, they were unanimous in their view that they did not rely upon the truthfulness of her statements in forming their diagnosis. Based upon this testimony, the trial court determined that both witnesses could testify respecting defendant's histrionic personality disorder and how this condition affected her behavior following the shooting.

The trial proceeded accordingly. After the State had rested and the defense had presented several witnesses, defense counsel represented that he was about to call Dr. Dyer and Dr. Latimer. The prosecutor interposed an objection on the ground that the proffered psychiatric evidence "ha[d] no relevance unless [defendant] testifie[d]." In the ensuing colloquy, the prosecutor argued that the defense experts' diagnosis of histrionic personality disorder would be admissible only to "corroborate" defendant's account of her post-shooting behavior were she to testify. Alternatively,

the prosecutor contended that if the defense experts were permitted to testify, the trial court must instruct the jury that any statements made by the defendant in the course of their clinical interview could not be considered as substantive evidence, *i.e.*, as proof of the truth of the contents of such declarations.

The trial court ruled that the defense experts' testimony would be permitted "only ... after the defendant testifie[d]." Because the court's decision appeared to be inconsistent with the evidentiary determination made before trial, defense counsel inquired whether the judge was "ruling that [the defense] could not call" the witnesses if defendant elected not to testify. The court responded in the affirmative. Although the trial court's reasoning is somewhat unclear, it is apparent that the judge was concerned by the fact that the defense experts' reports contained references to statements made by defendant in the course of their clinical interviews and, in the absence of her testimony, the record contained no independent evidence supporting her version of the shooting and its aftermath. The trial court fortified its decision by refusing to allow Dr. Dyer and Dr. Latimer to testify before the defendant took the stand. The court noted that it would be difficult for the jury to comply with an instruction to disregard the defense experts' testimony in the event the defendant elected to remain silent.

Based upon the trial court's decision, defendant took the stand and testified that the shooting was accidental. Predictably, defendant was confronted with her prior inconsistent statements and with the largely uncontradicted evidence pertaining to her calm demeanor and callous use of her mother's car and credit card following the shooting. Consistent with the trial court's ruling, both Dr. Dyer and Dr. Latimer were permitted to testify and explain defendant's post-shooting conduct in the context of their diagnosis of histrionic personality disorder.

It is against this factual backdrop that we address defendant's claim that the trial court's evidentiary decision was erroneous and effectively compelled her to testify.

## II.

We hold that the trial court improperly conditioned defendant's right to present psychiatric evidence upon her taking the stand and testifying. Specifically, we disagree with the trial court's conclusion that an expert witness may not refer to hearsay statements upon which he has relied in forming his opinion unless independent evidence is first presented establishing the truth of the out-of-court declarations.

Preliminarily, we find no merit in the prosecution's argument that the trial court intended only to bar the doctors from referring to defendant's hearsay statements, but not to preclude them from testifying. We view this contention as largely disingenuous. The trial court on at least two occasions expressly ruled that the defense could not present psychiatric evidence unless defendant first testified. As we pointed out in our recital of the facts, the trial court would not allow the defense experts to testify, although they were present in court, until defendant took the stand. We cannot ascribe some hidden and unarticulated meaning to the printed words of the transcript.

We begin our analysis with *N.J.R.E.* 703 which states in pertinent part that "[t]he facts ... upon which an expert bases an opinion ... may be those perceived by or made known to [him] at or before the hearing." Borrowing from *Fed.R.Evid.* 703, the rule goes on to provide that "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions ... upon the subject, the facts ... need not be admissible in evidence." In its original version in 1967, *Evid. R.* 56(2) required that an expert opinion be based "primarily" on evidence established at trial. Thus, an opinion resting solely or largely on inadmissible hearsay was sometimes disallowed. *See, e.g., Rogalsky v. Plymouth Homes, Inc.,* 100 *N.J.Super.* 501, 242 *A.*2d 655 (App.Div.), *certif. denied,* 52 *N.J.* 167, 244 *A.*2d 298 (1968), *overruled by State v. LaBrutto,* 114 *N.J.* 187, 553 *A.*2d 335 (1989). The rule was amended in 1982 to "allow more latitude in the admission of expert opinion testimony," *Ryan v. KDI Sylvan Pools, Inc.,* 121 *N.J.* 276,

284, 579 A.2d 1241 (1990), by permitting the witness to rely on facts or data which need not be otherwise admissible. Biunno, *Current N.J. Rules of Evidence,* comment 1 on *N.J.R.E.* 703 (1997).

Even before the amendment, our Supreme Court had held that a psychiatrist could testify as to what the defendant told him if the psychiatric opinion depended upon the hearsay declarations made in the clinical interview. *See, e.g., State v. Maik,* 60 N.J. 203, 208, 287 A.2d 715 (1972), *overruled on other grounds, State v. Krol,* 68 N.J. 236, 344 A.2d 289 (1975); *State v. Whitlow,* 45 N.J. 3, 19, 210 A.2d 763 (1965); *State v. Lucas,* 30 N.J. 37, 79, 152 A.2d 50 (1959). Since the diagnostic interview was considered "a crucial diagnostic tool," the "judicial aim [was] to make it an effective instrument of justice," *State v. Whitlow,* 45 N.J. at 20, 210 A.2d 763, by allowing the psychiatrist to refer to hearsay declarations upon which his conclusion rested. This was commonly permitted even in those cases in which the defendant elected not to testify. *See, e.g., State v. Maik,* 60 N.J. at 207, 287 A.2d 715; *State v. Lucas,* 30 N.J. at 51, 152 A.2d 50.

■ The Court was nonetheless sensitive to the concern that a defendant might abuse the rule by using an expert witness as a means to defeat the normal prohibition against the admission of hearsay. Clearly, an expert witness should not be permitted to serve as a conduit for alerting the jury to evidence it would not otherwise be allowed to hear. The danger of abuse is particularly acute where the defendant elects to remain silent. It would be a grave injustice in such a case to permit an expert witness to parrot the defendant's declaration, thus affording the accused an opportunity to testify without being subjected to cross-examination.

In order to avoid these pitfalls, the Court emphasized that introduction of the defendant's hearsay statements is permissible only where the psychiatrist asserts that such declarations "constitute[ ] a necessary element in the formulation of [the] opinion." *State v. Lucas,* 30 N.J. at 79, 152 A.2d 50. In that event, "the

testimony should be circumscribed by an appropriate limiting charge by the trial court to the effect that it should not be considered by the jury as substantive evidence relating to the question of guilt or innocence of the accused, but only as evidence tending to support the ultimate expert conclusion of the psychiatrist." *Ibid.* The Court "stressed that if the psychiatric opinion rested upon the factual content of the defendant's statement, the value of the expert opinion would depend upon independent proof of the truth of that content." *State v. Maik,* 60 *N.J.* at 208, 287 *A.*2d 715. The Court added:

> If it further appears that the psychiatrist's opinion hinges upon the truth of the matter asserted, rather than the fact that it was said, then the jury should be instructed that the probative value of the psychiatrist's opinion will depend upon whether there is, from all the evidence in the case, independent proof of the statement made by the accused.
>
> [*Ibid.* (quoting *State v. Lucas,* 30 *N.J.* at 79–80, 152 *A.*2d 50).]

*See also State v. Whitlow,* 45 *N.J.* at 19, 210 *A.*2d 763. These principles have long been applied in New Jersey, *see, e.g., Tramutola v. Bortone,* 63 *N.J.* 9, 15, 304 *A.*2d 197 (1973); *State v. Pasterick,* 285 *N.J.Super.* 607, 620, 667 *A.*2d 1103 (App.Div.1995); *Blanks v. Murphy,* 268 *N.J.Super.* 152, 164, 632 *A.*2d 1264 (App. Div.1993); *Statham v. Bush,* 253 *N.J.Super.* 607, 614, 602 *A.*2d 779 (App.Div.1992); *State v. McBride,* 213 *N.J.Super.* 255, 269, 517 *A.*2d 152 (App.Div.1986); *State v. Humanik,* 199 *N.J.Super.* 283, 305, 489 *A.*2d 691 (App.Div.), *certif. denied,* 101 *N.J.* 266, 501 *A.*2d 934 (1985), *cert. denied,* 493 *U.S.* 812, 110 *S.Ct.* 57, 107 *L.Ed.*2d 25 (1989), and in the federal courts, *see, e.g., Cummins v. Lyle Industries,* 93 *F.*3d 362, 371–72 (7th Cir.1996); *United States v. McCollum,* 732 *F.*2d 1419, 1422–23 (9th Cir.), *cert. denied,* 469 *U.S.* 920, 105 *S.Ct.* 301, 83 *L.Ed.*2d 236 (1984); *United States v. Sims,* 514 *F.*2d 147, 149–50 (9th Cir.), *cert. denied,* 423 *U.S.* 845, 96 *S.Ct.* 83, 46 *L.Ed.*2d 66 (1975).

We thus find that the trial court erred by conditioning defendant's presentation of psychiatric evidence on her waiver of the Fifth Amendment right to remain silent. We do not doubt the difficulty of the problem confronting the trial court. However, we believe that the interests of both the prosecution and the defen-

dant could have been protected by applying the rules we have cited. It appears that many of the defendant's statements to Dr. Dyer and Dr. Latimer did not constitute "necessary element[s] in the formulation of [their] opinions," *State v. Lucas*, 30 *N.J.* at 79, 152 *A.2d* 50, and could have been excluded without impairing the defense. It also appears that neither doctor relied upon the truth of the defendant's statements in reaching his conclusion. In sum, the defense experts could have been allowed to testify without requiring defendant to waive her privilege and without impairing the State's legitimate interests.

### III.

We come then to the question whether the trial court's evidentiary decision denied defendant a fair trial. Defendant argues that she was compelled to testify contrary to her Fifth Amendment rights. The issue is a difficult one.

Surely, not every "compelling" influence leading to an individual's decision to testify violates the Fifth Amendment privilege. Numerous pressures necessarily come to bear on an individual who is the subject of a criminal charge. The very fact of the trial, or the probative force of the proofs adduced by the prosecution, may influence an individual to alter an intention to remain silent. As colorfully phrased by Chief Justice Weintraub, "[a] defendant would rather be home with his slippers but he cannot because of the prosecution." *State v. Garvin*, 44 *N.J.* 268, 278, 208 *A.2d* 402 (1965). The fear that the criminal charge will go unrebutted may well "compel" the accused to lay bare the details of his defense or to offer an explanation of his conduct. Suffice it to say, the resulting "compulsion" may spring from a wide variety of sources, including social, professional and familial pressures. The Constitution is not offended by the revelation of criminal conduct under such circumstances, or by a judgment that continued silence is not in the accused's best interests. The simple and overriding fact is that a defendant in a criminal trial is frequently forced to testify in an effort to avoid the risk of conviction. That a

defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against self-incrimination.

 In a similar vein, not every evidentiary error by a trial court can be said to compel a defendant's decision to testify. If it were otherwise, every error by the trial court in admitting the prosecution's evidence, however marginal its effect, could be transmogrified into harmful constitutional error merely by reason of the defendant's blanket assertion that he took the stand where he otherwise would have remained silent.

We cannot be sure that defendant would have remained silent but for the trial court's error. We have considered, but have rejected, remanding this matter to the Law Division for exploration of this question. In this regard, we do not deem it a palliative to explore testimonially the thoughts of trial counsel on his pertinent conversations with defendant. Our limited experience suggests such inquiries strain the attorney-client relationship with no compensating gain.

We are thus left with the present record to resolve the issue. The transcript discloses that defendant first declared her intention to testify immediately after the trial court ruled that she could not otherwise present psychiatric evidence. There are strong indications in the record that before the court's decision her intention was to remain silent. Moreover, the trial court made it abundantly plain that defendant's waiver of her right not to testify and her right to present psychiatric evidence were inextricably linked. Defendant was told that there was a penalty for asserting her right to remain silent—forfeiture of her right to present relevant evidence on a significant factual issue. We deem this a powerful form of compulsion. *Cf. Lefkowitz v. Turley*, 414 *U.S.* 70, 76, 94 *S.Ct.* 316, 322, 38 *L.Ed.*2d 274, 281 (1973); *Garrity v. New Jersey*, 385 *U.S.* 493, 497, 87 *S.Ct.* 616, 618, 17 *L.Ed.*2d 562, 565–66 (1967); *Spevack v. Klein*, 385 *U.S.* 511, 515–16, 87 *S.Ct.* 625, 628, 17 *L.Ed.*2d 574, 577–78 (1967).

It is arguable that defendant should have stood her ground and relied upon an appeal to correct the error committed. But we would be short on realism were we to require such a course. This was a capital case. While an appellate remedy was undoubtedly available, we can understand how and why defendant succumbed to the pressure and elected to testify.

We thus find that constitutional error was committed and that defendant was denied a fair trial. The result is unfortunate. The State's evidence was overwhelming. Although error, the decision of the trial court was made in good faith with the intent to balance the antagonistic rights of the State and defendant. However, the Constitution commands that "[n]o person ... shall be compelled in any criminal case to be a witness against himself ...," and we can imply no exception. *U.S. Const.* amend. V. In light of our disposition of the primary issue raised, we need not consider the remaining question.

Reversed and remanded for a new trial.