**UNITED STATES of America,
Appellee,**

**v.**

**Daniel J. DRISCOLL, Defendant-
Appellant.**

**No. 406, Docket 31946.**

United States Court of Appeals
Second Circuit.

Argued April 22, 1968.

Decided July 30, 1968.

Rehearing En Banc Denied Nov.
15, 1968.

Maurice N. Nessen, New York City (Kramer, Nessen & Hochman, Robert E. Kushner, New York City, on the brief), for defendant-appellant.

John H. Doyle, III, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern District of New York, Douglas S. Liebhafsky, Asst. U. S. Atty., on the brief), for appellee.

Before HAYS, ANDERSON and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Defendant Daniel J. Driscoll appeals from a judgment of conviction entered after a six-day trial by jury in the United States District Court for the Southern District of New York, Edward C. McLean, J., presiding. Appellant was found guilty on three counts of willfully and knowingly failing to file income tax returns for the years 1960, 1961 and 1962. 26 U.S.C. § 7203. The district court sen-

See also D.C., 276 F.Supp. 333.

tenced Driscoll to six months on each count, to be served concurrently, and admitted him to bail pending appeal. For the reasons stated below, we reverse.

This well-briefed and argued appeal is from Driscoll's second trial; the first ended in a hung jury in December 1966. The principal issues before us involve a psychiatric examination of appellant made in November 1966, prior to the start of the first trial before Judge Inzer B. Wyatt. At that time, the court treated a suggestion of defense counsel as a motion under 18 U.S.C. § 4244 to determine defendant's ability to stand trial.[1] To examine defendant, the judge appointed Dr. David Abrahamsen, a psychiatrist, who reported that Driscoll was able to understand the proceedings against him and to assist in his own defense. Accordingly, the case went to trial, ending when the jury was unable to reach a verdict. At that trial, Dr. Abrahamsen testified for the Government concerning defendant's mental condition in 1960, 1961, 1962, and 1963. Before the second trial, defendant moved, *inter alia*, to suppress such testimony on various grounds. Judge McLean denied the motion in all respects, without prejudice to an objection at trial on the grounds of relevance.

During the second trial only two issues were contested: Did the defendant act "willfully" in failing to file his returns, and was he mentally responsible for his

actions? The Government introduced evidence to show Driscoll's ability to handle his affairs—e. g., his successful law practice and major responsibilities, his profitable investments and his active social life—but presented no psychiatric evidence in its case-in-chief. For the defendant, Dr. Lawrence I. Kaplan, a psychiatrist, testified that at the time the tax returns were due Driscoll suffered from a "character neurosis with [a] marked difficulty in complying with his responsibilities because of fear of failure." The doctor concluded from his examination that:

> In my opinion he did have the type of disorder which would cause him to lack the substantial capacity to confirm his behavior to the requirements [of law] and to appreciate the nature of what he was doing.

The defense offered other proof to show appellant's mental deterioration: He procrastinated endlessly when faced with a decision in either business or personal affairs; his desk was a clutter of pending problems and unopened mail; others often had to take over his work to avoid embarrassment to the firm; he was served with seventeen separate dispossess notices for failure to pay rent on the two-room apartment in which he lived alone; his car, accumulating monthly charges of $50, sat unused in a garage from 1963 to 1967.

---

1. In pertinent part, that section provides:

> Whenever after arrest and prior to the imposition of sentence * * * the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused * * * to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. * * * If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. *No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding.* * * * [Emphasis added.]

In rebuttal, the Government put Dr. Abrahamsen on the stand over a renewal of defendant's pre-trial objections. Relying solely on the two interviews he had conducted under Judge Wyatt's section 4244 order, the doctor testified that while the defendant was "somewhat depressed and rather uncommunicative," he was suffering from no more than a "situational depression." Such depressions, the doctor explained, are brought on by external events, and they are not mental defects. As a basis for this conclusion, the doctor repeated a number of statements made by the defendant during the interviews. These statements concerned defendant's family, his education, his lack of friends, his eating, sleeping and smoking habits, his prior psychiatric treatment, his rising income and his inability to concentrate on his work.

In this court, appellant claims that admission of this testimony deprived him of various constitutional rights, violated protective provisions of section 4244, and offended notions of fairness. Because we agree with this last contention, in our supervisory capacity we reverse the conviction; we do not deal with the first two arguments.

The facts on the manner and scope of Dr. Abrahamsen's appointment are as follows: At a pre-trial conference on October 31, 1966, defense counsel presented letters from a psychiatrist and a psychologist suggesting postponement of the trial because of defendant's psychological problems. When the Government objected, defense counsel requested that the court appoint a psychiatrist to examine defendant to determine his competency to stand trial. Judge Wyatt issued an order which was clearly limited in scope; it specified that Dr. Abrahamsen, whose name had been suggested by the Government:

> [M]ake such examination and observations of the defendant, Daniel J. Driscoll, as is necessary to determine such defendant's mental competency to understand the proceedings against him and properly to assist in his own defense * * *.

It is apparent that nothing in the proceedings up to this point concerned defendant's sanity when he failed to file in 1960, 1961 and 1962 tax returns. The two interviews which constituted the psychiatric examination were held in early November 1966, without the presence of counsel.

These circumstances lend strong support to the argument that it was unfair to allow Dr. Abrahamsen to examine and to testify on the issue of Driscoll's criminal responsibility years before the trial. The fact that the doctor apparently construed the order of appointment as so authorizing him does not resolve the problem of Driscoll's reasonable expectations. The use made of the doctor's testimony clearly went beyond the terms of his appointment, which limited him to a determination of Driscoll's competence to stand trial in late 1966. It is true that Judge Wyatt later allowed the doctor to testify in the first trial on Driscoll's sanity in the early 1960's, thereby perhaps intending a *nunc pro tunc* amendment of his order. However, the issue transcends technicality. We do not believe that a defendant can be told that he is to be examined for one purpose and, once his cooperation has been obtained, be advised of another.

The Government argues that Driscoll "must be held to have been aware" that the examination under section 4244 might be used not only to prove competence in 1966, but also sanity in the prior years, because of various decisions in the District of Columbia allowing such dual use. E. g., Ashton v. United States, 116 U.S.App.D.C. 367, 324 F.2d 399, 401 (1963); Edmonds v. United States, 106 U.S.App.D.C. 373, 273 F.2d 108, 114 (1959), cert. denied, 362 U.S. 977, 80 S.Ct. 1062, 4 L.Ed.2d 1012 (1960); Edmonds v. United States, 104 U.S.App.D.C. 144, 260 F.2d 474, 476–478 (1958) (opinion of Bazelon, J.). The clarity of such presumed "notice" is questionable; the District of Columbia circuit court has itself emphasized that the order appointing the doctor should make clear the proposed dual purpose for the

examination, see Winn v. United States, 106 U.S.App.D.C. 133, 270 F.2d 326 (1959), cert. denied, 365 U.S. 848, 81 S.Ct. 810, 5 L.Ed.2d 812 (1961), although the failure to do so will not necessarily render the psychiatrist's testimony inadmissible at trial. See Jones v. United States, 109 U.S.App.D.C. 111, 284 F.2d 245, 248–249 (1960), cert. denied, 365 U.S. 851, 81 S.Ct. 816, 5 L.Ed.2d 816 (1961). The reason given in *Winn* for clarity in the order, 270 F.2d at 328, was that:

> There is a vast difference between that mental state which permits an accused to be tried and that which permits him to be held responsible for a crime. * * * "[E]xaminations, made for the purpose of determining his competency to stand trial * * * require less than examinations designed to determine sanity for the purpose of criminal responsibility." [Citations omitted.]

The point is, of course, valid, and the need both for proper direction of the examining physician and a thorough examination, when the issue is responsibility for the crime, has been emphasized in other contexts. See Johnson v. United States, 344 F.2d 401, 403–409 (5th Cir. 1965); Rollerson v. United States, 119 U.S.App.D.C. 400, 343 F.2d 269, 271–276 (1964). In any event, we do not feel that defendant can fairly be held to have received "notice" of a proposed dual use of his examination in the face of a specific order allowing only one.

In addition, there are other compelling considerations in defendant's favor. Had Driscoll known that the examination might be used at his trial, he might have asked for—and perhaps received, with or without government consent—certain

procedural safeguards under appropriate conditions, e. g., if feasible, having his own representative present at,[2] or requiring a transcript or video tape of, the examination.[3] More important, defendant was entitled to notice so that he could consult with counsel beforehand and thereafter fully and intelligently respond to the doctor's questions. The Government asserts that what defendant seeks is "a constitutional right to slant his answers." The argument proves too much. The possibility of a "slanted" answer, or silence, exists whenever a defendant is given notice of his rights prior to a statement. But the right to notice does not therefore disappear. See, e. g., Miranda v. Arizona, 384 U.S. 436, 480–481, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Moreover, while it is true that a defendant may give different answers if he is told the potential use of his statement and allowed to consult his lawyer about the significance of his words, we will not assume that the answers will for that reason be dishonest. In this case, they might well have been fuller, had defendant himself focussed on his state of mind five years before.[4] In any event, for all of the reasons set forth above we hold that it was unfair to use Dr. Abrahamsen's testimony against defendant at his trial without giving him adequate notice of this possibility before the examination. Accordingly, the conviction must be reversed.

On this disposition of the case, it is not necessary to deal now with the other issues growing out of Dr. Abrahamsen's examination. We realize that some of them have far-reaching implications. Thus, relying on specific language in 18

---

2. Appellant argues that under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), he was constitutionally entitled to have his lawyer present when Dr. Abrahamsen examined him. We do not pass upon that contention.

3. Cf. United States v. Albright, 388 F.2d 719, 727 n. 11 (4th Cir. 1968); Pope v.

United States, 372 F.2d 710, 720–721 (8th Cir. 1967) (in banc), rev'd on other grounds, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968); State v. Whitlow, 45 N. J. 3, 210 A.2d 763, 775–776 (1965).

4. Dr. Abrahamsen testified that defendant was "reluctant, reluctant, in giving information about himself * * *."

U.S.C. § 4244,[5] appellant argues that a psychiatrist appointed under that section to examine a defendant may not testify at trial concerning any statements made to him by the defendant. Cf. Otney v. United States, 340 F.2d 696, 702 (10th Cir. 1965). The Government responds that the statutory prohibition against admission of such statements "in evidence against the accused on the issue of guilt in any criminal proceeding" does not bar testimony as to criminal responsibility. In other words, relying on the District of Columbia cases noted earlier,[6] the Government argues that "the issue of guilt" does not include the issue of criminal responsibility. The question is by no means simple, but this and similar problems in this case may well be worked out by sensible accommodation before retrial as to the scope of a new examination and the use thereof. If that does not occur, the district court should consider whether, on the issue of criminal responsibility alone, it has the power apart from 18 U.S.C. § 4244 to order a separate psychiatric examination at this stage of the proceedings. Certainly, a strong case can be made for the existence of such power, see Alexander v. United States, 380 F.2d 33, 39 (8th Cir. 1967) ("It would violate judicial common sense to permit a defendant to invoke the defense of insanity and foreclose the Government from the benefit of a mental examination to meet this issue."). Accord, United States v. Albright, 388 F.2d 719 (4th Cir. 1968); Pope v. United States, 372 F.2d 710, 717–721 (8th Cir. 1967) (in banc), rev'd on other grounds, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968) (per curiam); cf. Hughes v. United States, 113 U.S.App.D.C. 127, 306 F.2d 287 (1962). The Government has obviously been adequately notified of defendant's intention to plead the defense of insanity. After a psychiatric examination under such general authority, it

might still be argued that, even on the issue of criminal responsibility, an examining psychiatrist could not testify as to any "statement made by the accused." However, since the limitation in section 4244 would not by its terms apply, we would not then regard as persuasive an argument based on that statute. Of course, the applicability of defendant's constitutional right against self-incrimination would remain to be determined. As the cases just cited indicate, difficult problems will arise as to the waiver, if any, of such right and the extent thereof, the testimonial nature of an examining doctor's testimony, and its allowable scope and detail. But, "how best to accommodate a defendant's privilege against self-incrimination to meaningful medical opinion and testimony" will be best decided in the particular context of trial testimony at a retrial. See United States v. Albright, supra, 388 F.2d at 725–726 & n. 9.

Appellant's remaining points need little discussion. Thus, he complains of the charge on willfulness, but on the facts of this case we do not find it erroneous. Whether it is necessary to explain to the jury the significance of lack of delusions or hallucinations we leave to the sound discretion of the trial judge. Finally, the contention that appellant was entitled to *Miranda*-type warnings when he was questioned in his own office by two agents of the Intelligence Division of the Internal Revenue Service must be rejected under our recent ruling in United States v. Mackiewicz, 401 F.2d 219 (2d Cir. 1968).

Judgment of conviction reversed; the case is remanded for further proceedings consistent with this opinion.

ANDERSON, Circuit Judge (dissenting):

I dissent. While I agree that it is preferable that the Government, when it

---

5. See the emphasized language in note 1, supra.

6. The Government also cites United States v. Freeman, 357 F.2d 606, 611 (2d Cir. 1966), and Birdsell v. United States, 346

F.2d 775, 780–781 (5th Cir.) (by Friendly, J., sitting by designation), cert. denied, 382 U.S. 963, 86 S.Ct. 449, 15 L. Ed.2d 366 (1965). However, construction of section 4244 was not raised as an issue either in *Freeman* or in *Birdsell*.

is seeking to have its own psychiatrist examine an accused who has pleaded insanity as a defense, make a motion to the court for specific leave to do so, it is not necessarily unfair or damaging to a defendant, or reversible error per se, if the Government, instead, calls a psychiatrist who has previously examined an accused under § 4244, provided, as in this case, the alienist can, because of the completeness of his original examination, qualify to give an opinion on the mental competency of the accused at the time the offense was committed. Jones v. United States, 109 U.S.App.D.C. 111, 284 F.2d 245, 249 (1960). Actually a thorough examination under § 4244 of one awaiting trial almost inevitably includes the disclosure of sufficient information and material out of his recent past to warrant the expert's conclusion as to the accused's sanity at the time the offense was committed. See Birdsell v. United States, 346 F.2d 775, 780 (5 Cir.) (by Friendly, J., sitting by designation), cert. denied 382 U.S. 963, 86 S.Ct. 449, 15 L.Ed.2d 366 (1965).

But limiting § 4244 to the special purpose for which it was designed and requiring the Government to make a separate motion for an examination as to the accused's mental condition at the time of the offense is a more orderly procedure and has the added advantage of affording the trial court an opportunity to make provisions concerning the time and place of the examination and other attendant circumstances, which in particular cases may appear necessary. The court should have wide discretion in this area and should fashion such protection for the parties as the varying circumstances may require.

It is perhaps, therefore, inadvisable for the Government to take the risk that some rights of the defendant may be impaired and that he may have suffered prejudice as a result, but in the present case I can see no damage or likelihood of prejudice to Driscoll from the Government's use of Dr. Abrahamsen or from any of

his testimony. The appellant points to the Doctor's disclosure of Driscoll's statements to him regarding his family, education, lack of friends, eating, sleeping and smoking habits, etc. These are certainly answers to routine questions and have nothing to do with the elements of the offense charged. He also argues that Dr. Abrahamsen's testimony that at the examination Driscoll "was very alert and was able to answer this question very well," was, in effect, telling the jury that the accused intended to perform the unlawful acts and did so wilfully. But this is not so. Psychiatric examinations are not at all concerned with the question of whether or not the accused performed the criminal act or acts charged but whether he had sufficient mental capacity to be held responsible for his acts under the measure adopted by this court in United States v. Freeman, 357 F.2d 606 (2 Cir. 1966). Of the elements of the offense those of intent and wilfulness have the closest relationship to mental capacity, but even there the psychiatrist is concerned, not with the factual issue of whether or not the accused intended to perform the act or did it wilfully, but whether or not he had the mental capacity to form the requisite intent.

The majority opinion is based entirely on the unfairness of the use by the Government of Dr. Abrahamsen's thorough examination of Driscoll without notice to the defense. It assumes that the defendant was disadvantaged by the lack of such notice and suggests that he might have been provided in advance with procedural safeguards such as having his own representative at the examination or an order assuring him that he would be provided with a transcript of the examination or preliminary coaching by his counsel for constitutional protection purposes or for other reasons. But the appellant has been unable to point out anything about Dr. Abrahamsen's examination which violated the limitations imposed by § 4244 or actually prejudiced Driscoll in the slightest. There is no

statement by counsel of what he might have instructed Driscoll to say or do which would have changed anything that was said or done. It is also my opinion that an accused has no right to have defense counsel or his own expert present while the court appointed psychiatrist is making his examination nor is the defense entitled to a transcript of the examination, though the court might require an exchange of the reports of the experts representing each of the parties. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), is not in point because the psychiatric examination is not concerned with the question of whether or not the accused was guilty or innocent of certain criminal activity and the examination can in no sense be considered a "critical prosecutive stage."

The cases cited by the majority do not support the proposition that the defendant is entitled to notice of the dual purpose of the examination. Winn v. United States, 106 U.S.App.D.C. 133, 270 F.2d 326 (1959) holds only that because the issue of mental incompetence to stand trial differs from the issue of criminal responsibility, in the absence of a showing that the examination was sufficiently thorough to form a basis for an opinion regarding responsibility, the psychiatrist should not testify on that issue. There is nothing in that opinion, or in Johnson v. United States, 344 F.2d 401, 403–409 (5 Cir. 1965) and Rollerson v. United States, 119 U.S.App.D.C. 400, 343 F.2d 269, 271–276 (1964), to suggest that the reason the order should clearly specify the scope of the examination is in order to provide the defendant with notice. In *Winn*, although there was a likelihood that the accused's mental state at the commission of the crime would be a critical issue at the trial, the district court's order was restricted to a competency examination. On appeal the court expressed disapproval of the narrow order only because the more extensive responsibility examination "is required not only to protect the rights of the accused, but also to protect 'society's great interest' in hospitalizing the accused, if his violent act sprang from mental disorder * *." 270 F.2d at 327. In *Johnson* and *Rollerson*, the courts indicated that the scope of the examination and the issues involved should be clearly and fully identified to the examining psychiatrist only so that he may adequately perform his job and so that his incomplete examination will not inconvenience the court or prejudice the accused's rights by serving as an insubstantial basis for the psychiatrist's testimony on responsibility.

I see no merit in the appellant's claim that an examination by the Government's psychiatrist of the accused's mental condition as of the time of the offense charged would imperil his Fifth Amendment protection against self-incrimination. The authority to permit the Government to examine the accused, when he has or will raise the insanity defense, stems from the inherent power of the courts, United States v. Albright, 388 F. 2d 719 (4 Cir. 1968); Alexander v. United States, 380 F.2d 33 (8 Cir. 1967); Pope v. United States, 372 F.2d 710, 719 (8 Cir. 1967); Winn v. United States, supra, and in exercising it, the court should limit the Government's right to the use of the evidence by borrowing and applying the safeguard provided in § 4244 which is: "No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this [order] * * * shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding." See United States v. Albright, supra.

The remaining points raised by the appellant have no merit and call for no discussion. The judgment below should be affirmed.

### On Petition for Rehearing

LUMBARD, Chief Judge.

A petition for a rehearing containing a suggestion that the appeal be reheard in banc having been filed herein by counsel for appellee, United States of America, Chief Judge Lumbard and Judges Moore, Friendly, and Anderson vote to grant the rehearing in banc, Judges Waterman, Smith, Hays, and Feinberg vote to deny, Judge Kaufman not participating.

Therefore, less than a majority of the active members of the court having voted to grant the rehearing in banc, it is

Ordered that said petition be and it hereby is denied.