**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ronald Ray MATTSON, Defendant-Appellant.**

**No. 71-2148.**

United States Court of Appeals, Ninth Circuit.

Nov. 27, 1972.

4. Keeler v. Carpenter, 449 F.2d 437 (10th Cir. 1971); Kiner v. Northcutt, 424 F. 2d 222 (10th Cir. 1970).

Gerson Simon (argued), Oakland, Cal., for defendant-appellant.

William B. Shubb, Asst. U. S. Atty. (argued), Dwayne Keyes, U. S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before DUNIWAY and WRIGHT, Circuit Judges, and RENFREW,* District Judge.

EUGENE A. WRIGHT, Circuit Judge.

Mattson was convicted after a jury trial of two armed bank robberies [1] and,

---

* Honorable Charles B. Renfrew, United States District Judge, Northern District of California, sitting by designation.

1. These were at a branch of the Bank of America in Sacramento, California on June 16, 1970 and at another branch of the same bank on May 8, 1970.

on this appeal, makes a number of assignments of error. All are without merit. We affirm.

THE INSANITY ISSUE.

About two months after his arrest on June 16, 1970, Mattson was ordered by the district court to be sent to the Medical Center for Federal Prisoners, Springfield, Missouri, for an examination to determine his competency to stand trial. [18 U.S.C. § 4244]. The order also provided that "if practicable" the examiners should ascertain Mattson's sanity on or about June 16, 1970, the date of the second alleged offense. Defense counsel was not advised of the dual nature of the examination and, apparently, received no copy of the court's order.

At Springfield, Mattson was examined by Dr. Fain who was summoned to the trial as a defense witness. As the trial proceeded, defense counsel chose not to call Dr. Fain to the stand but the government did call him. He testified that Mattson did not have a mental disease or defect and on June 16, 1970 did have the substantial capacity to appreciate the wrongfulness of his conduct and to conform to the requirements of the law. *See* Wade v. United States, 426 F.2d 64, 71–72 (9th Cir. 1970).

Defense counsel objected to this testimony on the issue of Mattson's sanity, relying on United States v. Driscoll, 399 F.2d 135 (2d Cir. 1968) and makes the same point on this appeal.

In *Driscoll* the Second Circuit held in a two-to-one decision that evidence of a defendant's sanity at the time of an offense, obtained in a § 4244 examination, is inadmissible unless defendant and his counsel had notice of the dual purpose of the examination.

Judge Anderson, dissenting in *Driscoll*, pointed out that it is not necessarily unfair or damaging to a defendant for the government to call a psychiatrist who had previously examined him under § 4244, provided the expert

"can, because of the completeness of his original examination, qualify to give an opinion on the mental competency of the accused at the time the offense was committed. Jones v. United States, 109 U.S.App.D.C. 111, 284 F.2d 245, 249 (1960). Actually a thorough examination under § 4244 of one awaiting trial almost inevitably includes the disclosure of sufficient information and material out of his recent past to warrant the expert's conclusion as to the accused's sanity at the time the offense was committed." 399 F.2d at 140.

■ The dissent also expressed the view that an accused, ordered to have an examination by a court appointed expert, is not entitled to have present his own expert or his own counsel. We agree.

■ In any event, *Driscoll* is distinguishable on its facts. There, the court's order limited the scope of examination to determining the accused's competency to stand trial. Here, the order specifically contemplated a more thorough examination to ascertain sanity at the time of the second alleged offense.

Further, the psychiatrist in *Driscoll* saw the accused five years after the alleged offense. In our case, Dr. Fain saw Mattson within four months of both offenses.

■ On these facts we do not find *Driscoll* controlling. Rather, this case is within the general rule that a psychiatrist appointed to make a § 4244 examination may give his opinion of the sanity of the accused at the time of the alleged offense. Ruud v. United States, 347 F.2d 321 (9th Cir. 1965), cert. denied 382 U.S. 1014, 86 S.Ct. 624, 15 L. Ed.2d 528 (1966); Birdsell v. United States, 346 F.2d 775 (5th Cir. 1965), cert. denied 382 U.S. 963, 86 S.Ct. 449, 15 L.Ed.2d 366 (1965), rehearing denied 383 U.S. 923, 86 S.Ct. 900, 15 L.Ed.2d 680 (1966), rehearing denied 384 U.S. 914, 86 S.Ct. 1347, 16 L.Ed.2d 368 (1966); Edmonds v. United States, 106 U.S.App.D.C. 373, 273 F.2d 108 (1959),

cert. denied 362 U.S. 977, 80 S.Ct. 1062, 4 L.Ed.2d 1012 (1960).

Mattson urges that another government expert, Dr. Bromberg, was thoroughly discredited and that his testimony alone would not support a guilty verdict. We are not in a position to tell what credence the jury gave to the opinion testimony of an expert who saw the accused for only two minutes. However, there was other evidence, especially the testimony of Dr. Fain, which supports the verdict of guilty.[2]

## THE SEARCH AND SEIZURE ISSUE.

Mattson contends that the evidence shows that his house and car were searched thoroughly and incriminating evidence seized prior to the issuance of a search warrant. The evidence does not show this at all.

Less than two hours after the June 16 robbery, in which three men were involved, a local police sergeant saw the getaway car parked in front of a home in Sacramento. After some inquiries in the neighborhood, made while another officer kept the home under observation, the sergeant went to the door. He was aided by officers of the F.B.I., the local sheriff's office and the city police. After some delay one of the three robbers, Abshire, opened the door. He was recognized from a description already given to the officers.

After Abshire was arrested, the officers entered the house, encountered Mattson in the hallway, and arrested him. They proceeded to look for the third man and found him hiding in a bedroom. At this time the officers were looking for men believed to be armed. They were not looking for, and they did not find, any incriminating evidence.

Later that day an F.B.I. agent obtained warrants to search the house, the getaway car, and another car which was parked in the garage. Armed with these warrants the officers conducted the search and found weapons, ammunition and stolen money.

■ No motion to suppress was made at trial. In the absence of good cause Mattson cannot now raise the question on appeal. United States v. Johnson, 469 F.2d 281 (9th Cir., 1972); Darden v. United States, 405 F.2d 1054 (9th Cir. 1969). Furthermore, it is obvious that any motion to suppress would have been without merit.

## THE INCRIMINATING STATEMENT.

Mr. Vaughan, an employee of the United States Marshal assigned to guard Mattson in the hospital room where he was taken after his arrest, testified that Mattson said:

"Boss, bank robbery is not my bag. We hung around about forty-five minutes before we went into that bank."

Mattson volunteered this statement in the course of a casual conversation with Vaughan, and not in response to any interrogation or prodding on the latter's part. Nevertheless, he contends that Vaughan's testimony was inadmissible because no Miranda [3] warnings were given.

■ This argument is easily disposed of. The absence of Miranda warnings is not significant where, as here, the accused's statement is made spontaneously before any questions are asked. See Pitman v. United States, 380 F.2d 368 (9th Cir. 1967).

■ Mattson also contends that the statement was inadmissible because at

---

2. Dr. Fain's testimony that Mattson did not have a mental disease or defect, if believed, discredited the expert testimony of Drs. Meller and Rapaport that Mattson was legally insane. As this court has noted:

"The nature and quantum of evidence of sanity which the Government must produce to sustain its burden and take

the case to the jury will vary in different cases." United States v. Ingman, 426 F.2d 973, 976 (9th Cir. 1970), quoting Brown v. United States, (5th Cir. 1965), 351 F.2d 473, 474. On this record the government has sustained its burden.

3. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**1238**

the time it was made he was under the influence of drugs administered to alleviate the problems of heroin withdrawal. The trial court, mindful of our decision in Gladden v. Unsworth, 396 F.2d 373 (9th Cir. 1968), held a hearing out of the presence of the jury to determine whether the effects of the drugs administered to Mattson rendered his statement involuntary. Dr. Meller, who was attending Mattson at the time and who later testified for the defense on the issue of sanity, testified at length on the effects of the drugs. At the close of this testimony the court found that the statements were voluntary. This finding was supported by the evidence.'

### THE PROSECUTOR'S COMMENT IN ARGUMENT.

■ Mattson contends that a remark of the United States Attorney,[4] in his closing argument to the jury, was an improper comment on the exercise of the husband-wife privilege. There was no showing that either woman referred to was Mattson's wife. Mattson did not testify or say in any preliminary proceedings that he was married. The comment was not error. Bisno v. United States, 299 F.2d 711 (9th Cir. 1961), cert. denied 370 U.S. 952, 82 S.Ct. 1602, 8 L.Ed.2d 818 (1962), rehearing denied 371 U.S. 855, 83 S.Ct. 51, 9 L.Ed.2d 94 (1962). Mattson's reliance on Courtney v. United States, 390 F.2d 521 (9th Cir. 1968), cert. denied 393 U.S. 857, 89 S.Ct. 98, 21 L.Ed.2d 126 (1968), rehearing denied 393 U.S. 992, 89 S.Ct. 440, 21 L. Ed.2d 457 (1968), is misplaced.

### THE CHAIN OF CUSTODY OF THE STOLEN MONEY.

■ Mattson contends that the evidence showed that there was a break in the chain of custody of money taken from the house and car and later introduced at the trial. He is mistaken. F. B.I. agent Dolde, who inventoried the money, including "bait bills," was not able to trace it to its source. But agent Basham who removed it from the house and car testified that he placed it in packages marked with code letters and numbers and agent Dolde inventoried packages similarly marked. The link was sufficiently established.

### MATTSON'S CLAIM OF INCOMPETENT TRIAL COUNSEL.

Finally Mattson argues that he was denied effective assistance of counsel because his trial counsel was incompetent. This contention is utterly without merit. Two of the so-called "errors" that counsel on appeal called to our attention are not errors at all. Counsel on appeal has an incorrect view of the law.

■ The third, failure to make a motion to suppress, was part of counsel's trial strategy which was directed primarily to the defense of insanity.[5] In this counsel did a professional job. He argued vigorously against the introduction of Dr. Fain's testimony. He produced two defense experts on the issue and another witness who impeached Dr. Bromberg's statement that he had interviewed Mattson for an hour. We fail to see what more he could have done. To sustain a claim of inadequate or incom-

---

4. "You perhaps have been wondering all along what was the defendants' mental condition at the time of these offenses. You heard testimony of doctors here that examined them after. You have seen records here prior to 1965, but you have not heard any testimony of just how much narcotics they were taking at this time.

   "Now, there were some women they were living with. Perhaps you could have had some testimony from them, but

you did not have this. And perhaps you have been wondering: Well, just how much narcotics were they taking." (R. T., p. 913).

5. Appended to appellant's brief is a portion only of a letter from trial counsel to appellate counsel, written long after the trial, attempting to explain some of his thought processes. The appendix does not support appellant's claim, is highly improper, and is ordered stricken from the brief.

petent representation defendant must show that the trial was rendered "a sham or a farce." United States v. Ordones, 469 F.2d 70 (9th Cir. 1972). This trial was a far cry from that.

Affirmed.