**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jerry Mack MALCOLM, Defendant-
Appellant.**

**No. 72–2183.**

United States Court of Appeals,
Ninth Circuit.

March 8, 1973.

John K. Van de Kamp, Federal Public Defender, Alan L. Issacman, Deputy Federal Public Defender, San Diego, Cal., for defendant-appellant.

William D. Keller, U. S. Atty., Stanley I. Greenberg, Earl E. Boyd, Eric A. Nobles, Asst. U. S. Attys., Los Angeles, Cal., for plaintiff-appellee.

Before HUFSTEDLER and GOODWIN, Circuit Judges, and SKOPIL,* District Judge.

---

* Honorable Otto R. Skopil, United States Judge for the District of Oregon, sitting by designation.

## OPINION

HUFSTEDLER, Circuit Judge:

Malcolm appeals from his conviction for armed bank robbery. (18 U.S.C. § 2113(a)(d).)

The only contested factual issue at trial was his sanity at the time of the offense. Over his objection, the district court admitted the testimony of a psychiatrist who had examined him pursuant to a pretrial order compelling him to submit to an examination to ascertain his sanity at the time of the offense. Malcolm contends that the court erred in admitting the testimony because the pretrial order was invalid on statutory and constitutional grounds and that, even if the order were authorized by 18 U.S.C. § 4244, the testimony exceeded the statutory restrictions imposed by the section upon the use of such testimony. He further argues that the court erred in repeatedly interrupting defense counsel's examination of witnesses and his closing argument and in instructing the jury, on intent and motive.

When Malcolm first appeared in court, the judge observed that something was seriously wrong with him. Malcolm was dazed and almost stuporous. He could not stand up without support. The public defender told the court that he had been unable to communicate with his client. The marshal reported that Malcolm did not seem to know what was going on around him. The district court tried to address Malcolm personally and was unable to elicit any response. Defense counsel asked the court to appoint a psychiatrist under section 4244 to examine his client and to give his opinion on his competence to stand trial. The district court agreed and promptly signed a form order appointing Dr. Abe. Unknown to defense counsel, the form required Malcolm to submit to a dual purpose psychiatric examination to ascertain not only his competence to stand trial but also his sanity at the time of the offense. The district court did not attempt to inform Malcolm of the contents of the order, and, under the circumstances, any effort to have done so would then have been futile.

Dr. Abe examined Malcolm nine days later. From the face of Dr. Abe's report, dated September 30, 1971, the examination consisted primarily of a personal interview with Malcolm. Almost all of the report, which is slightly longer than two letter-sized pages, is a recitation of Malcolm's life history. It narrates his chaotic youth, his mother's murder of his stepfather, his education, his medical discharge from the Marine Corps for mental disability, his grand mal epileptic seizures, and his brief arrest record. The remainder of the report follows:

"*PRESENT ARREST:* Defendant states he was arrested for 'bank robbery.' He admits holding up with a gun the United California Bank in Pomona. He states further 'it was an emotional thing.' By this he means he robbed the bank to get back at a girl friend who works in the bank. 'Also to go to jail because no where to go.' Initially, defendant thought he would be shot and killed while robbing the bank. He then found himself walking toward the police station. Someone yelled at him, so he shot at him. He kept walking and also ran at times. Defendant states he will repeat the offense, which he knows is wrong, if placed on the street because 'I have no place to go.' He apparently doesn't mind being in jail.

"*MENTAL STATUS EVALUATION:* Defendant was a cooperative individual, who manifested no odd or bizarre mannerisms. His speech was relevant and coherent. His affect varied appropriately. No delusions, hallucinations or disordered thinking was apparent. Defendant believes he will be going to prison because of the offense which he has committed. Defendant's mental grasp and capacity indicate about average intelligence.

"*OPINION:* Defendant is presently sane. ·Defendant is presently able to understand the proceedings against

him, is able to assist in his own defense and does not present mental incompetency.

"Defendant does not have a mental disease or defect causing him to lack substantial capacity either to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law."

The competency issue was submitted to the court solely on Dr. Abe's report. The court found him competent and arraigned him. Malcolm pleaded not guilty. Defense counsel told the court that the defense would be insanity, and he moved for the appointment of an independent psychiatrist to examine Malcolm, pursuant to section 3006A(e)(1) of the Criminal Justice Act (18 U.S.C. § 3006A(e)(1)). The district court denied the motion. The motion was renewed before trial, and the court granted it.[1]

The government relied exclusively on lay testimony in presenting its case in chief. Malcolm took the stand and admitted the bank robbery. He described his despondency over a broken love affair and said that his motive in robbing the bank was to get himself killed. The defense psychiatrist gave his opinion which, if credited, would have supported a finding of insanity. On rebuttal, the Government called Dr. Abe. Defense counsel objected to the admission of any testimony by Dr. Abe based on or related to statements Malcolm had made to Dr. Abe during his September 29 examination on the ground that section 4244 forbade its use. The court gave two reasons for overruling the objection: (1) The restrictions in section 4244 do not apply when the only question before the court is sanity of the defendant at the time of the offense, and (2) a waiver of the section 4244 restrictions results when defense counsel has obtained a psychiatric examination of a defendant to ascertain sanity.

Dr. Abe testified, in substance, that in his opinion Malcolm was sane when he robbed the bank. He did not quote to the jury any statements that Malcolm made to him, but, as we earlier observed, the foundation for his opinion was Malcolm's recitation of his whole history, including the bank robbery episode.

I.

Malcolm argues that the order initially appointing Dr. Abe was invalid to the extent that it compelled Malcolm to submit to an examination to ascertain his sanity at the time of the offense because there is no statutory authorization for the order.

The statute upon which the court relied in issuing the order is 18 U.S.C. § 4244 which, in pertinent part, provides:

"Whenever after arrest and prior to the imposition of sentence . . . the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. . . . No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the

---

1. Exercise of the court's discretion in favor of granting the motion under the circumstances of this case was well advised.

United States v. Schultz (8th Cir. 1970), 431 F.2d 907.

consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding. A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury."

Because nothing on the face of section 4244 or in its legislative history [2] purports to authorize an order to appoint a psychiatrist to examine a defendant to ascertain his sanity at the time of an offense, the great weight of circuit opinion is that section 4244 cannot be expanded to encompass such an examination and that the source of authority to issue an order of that type is the inherent power of the court. (*E.g.*, United States v. Driscoll (2d Cir. 1968), 399 F. 2d 135, 137–138, 139; United States v. Albright (4th Cir. 1968), 388 F.2d 719, 722; Featherstone v. Mitchell (5th Cir. 1969), 418 F.2d 582, 584; United States v. Bohle (7th Cir. 1971), 445 F.2d 54; United States v. Maret (8th Cir. 1970), 433 F.2d 1064, 1067.) [3]

The Ninth Circuit's views are not crystalline. In Wade v. United States (9th Cir. 1970), 426 F.2d 64, 74, our court, sitting en banc, recognized that both the source of power to compel a defendant to submit to a psychiatric examination and the mode of its exercise

raised serious statutory and constitutional questions. We expressly refused to decide the questions because it was not strictly necessary to reach them in disposing of the case. A panel in United States v. Handy (9th Cir. 1971), 454 F.2d 885, 889, briefly discussed these issues and inconclusively observed that the foundation for the questioned order could be section 4244 or inherent power of the court. A different panel writing United States v. Mattson (9th Cir. 1972) 469 F.2d 1234 assumed, without analysis, that section 4244 authorizes a dual purpose examination.

■ The questions are squarely presented in Malcolm's case, and we think they should be squarely answered. Accordingly, we bring the Ninth Circuit into line with the Second, Fourth, Fifth, Seventh, and Eighth Circuits by holding that section 4244 does not authorize an order compelling a defendant to submit to a psychiatric examination to determine his sanity at the time of the offense and that the source of power to order such an examination is the inherent power of the court.

■ Our holding does not automatically invalidate the order questioned in this case or an order in any other case erroneously based on section 4244. Such orders are valid if, under the particular facts and circumstances of the case, the order did not impermissibly infringe the defendant's constitutional guaranties and if it did not exceed the bounds of

2. The House Report, echoing the Senate Report, explained that "[t]he bill provides for a uniform procedure for delinquents suffering from mental disorders which exist . . . at the time of trial." (H.R.Rep. No. 1309, 81st Cong., 1st Sess. (1949); 2 U.S. Code Cong.Serv. 1928 (1949).) Section 4244 was enacted because "[e]xisting Federal statutes prescribe no procedure whatever for determination of an accused person's mental competence to stand trial and there are but few judicial questions on the question." *Id.*

3. The view of the District of Columbia Circuit is different, but not necessarily to the contrary. The circuit is firmly committed to the practice of dual purpose pretrial psychiatric examinations when there is anything in the accused's history that casts doubt either on his competence to stand trial or on his sanity at the time of the offense. But its opinions do not reveal the path of logic from the federal or district statutes to its conclusion. The opinions can be read as finding authority in inherent court power as well as in § 4244 or in its District counterpart. *E. g.*, Mitchell v. United States (1963), 114 U.S.App.D.C. 353, 316 F.2d 354; Edmonds v. United States (1959), 106 U.S.App.D.C. 373, 273 F.2d 108; Winn v. United States (1959), 106 U.S.App.D.C. 133, 270 F.2d 326.

discretion committed to the district court in exercising its inherent powers.

The constitutional guaranty of the right not to incriminate oneself is a limitation on the inherent power of the court to compel a defendant to submit to a psychiatric interview to ascertain his sanity at the time of the offense. Unlike an examination to ascertain competence to stand trial, the purpose of an interview to probe sanity at the time of the offense is to obtain information from the accused bearing directly on his guilt. If the defendant has knowingly and voluntarily requested such an examination, the Fifth Amendment presents no problem. (*Cf.* McCarthy v. United States (1969), 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L.Ed.2d 418.)

The Fifth Amendment right looms as soon as the court, on its own motion or the prosecutor's, orders the defendant to submit to the examination. Courts have regularly surmounted this hurdle when the Government has asked for such an examination after the defendant has raised the insanity defense and has introduced or has indicated that he will introduce, the testimony of his examining psychiatrist directed to the sanity issue. The rationale for the result is not always clear; the recurring themes are estoppel, waiver, and fairness.[4]

When a defendant, personally or through his counsel, raises his privilege in opposition to an order compelling him to submit to a sanity examination before he has indicated his intent to rely on insanity as a defense and before he has shown his intent to rely on an examining psychiatrist's testimony to support it, his objection cannot be defeated by using the estoppel, waiver, or fairness theories. Under such circumstances, he has done nothing upon which to predicate an estoppel or from which to find any waiver. Invocation of a fairness doctrine to overcome a properly invoked Fifth Amendment right, absent any foundation for waiver or estoppel, would erode and could potentially destroy the right.

■ When the court ordered the psychiatric examination to ascertain sanity at the time of the offense, no steps had been taken by Malcolm to invoke the insanity defense. If an objection to the order had been then interposed, the district court would have been obliged to confront the constitutional issue, and, if the objection were overruled, we too would have had to reach the question. However, the constitutional objection was never raised before the district court; accordingly, we decline to reach it.

■ Malcolm urges that the order was invalid to the extent that it went beyond an examination to determine his competency to stand trial because neither he nor his lawyer had notice of the dual nature of the order. There is force in the argument, but our court in United States v. Mattson, *supra*, 469 F.2d 1234 rejected the Second Circuit's decision of the point in his favor and accepted the views of the dissenter in United States v. Driscoll, *supra*, 399 F.2d 135.[5] Unless

---

4. The reasoning is cloudy in United States v. Handy, *supra*, 454 F.2d at 888–889, the only Ninth Circuit case that considered the problem; the discussion shuttles between a largely unarticulated concept of fairness and an oblique mention of the Schmerber line of cases (Schmerber v. California (1966) 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908). A sampling of circuit views includes: United States v. Baird (2d Cir. 1969), 414 F.2d 700, 707 (estoppel); United States v. Albright, *supra*, 388 F.2d at 723, 724 (truth and fairness).

5. "There is a vast difference between that mental state which permits an accused to be tried and that which permits him to be held responsible for a crime. . . . '[E]xaminations, made for the purpose of determining his competency to stand trial . . . require less than examinations designed to determine sanity for the purpose of criminal responsibility.' . . . It is not to be assumed, therefore, that a psychiatrist who has been ordered to prepare an opinion as to a man's trial competency will conduct the type of examination which is necessary to provide the

*Mattson* is overturned by our court en banc or by contrary Supreme Court authority, *Mattson* binds this circuit on the issue.

■ We conclude that the validity of the initial order authorizing the psychiatric examination to determine competency, pursuant to section 4244, and to ascertain sanity at the time of the offense, pursuant to inherent court power, cannot be successfully challenged on this appeal on constitutional grounds.[6]

## II

■ We turn to the questions raised by the admission, over objection, of Dr. Abe's testimony on the sanity issue. Because Dr. Abe was appointed pursuant to section 4244 to examine Malcolm upon his competency to stand trial, the statutory restrictions upon the use of information obtained from such examinations apply to the reception of Dr. Abe's testimony, even though the second aspect of the examination was not bounded upon the statute.[7]

The first limitation is that "[n]o statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding."[8] Malcolm contends that

permitting a psychiatrist who conducted a section 4244 examination to testify for the Government on the sanity issue violates that restriction because the psychiatrist's opinion rests primarily on his statements to Dr. Abe and that no effective cross-examination can be conducted without probing what Malcolm had told him. Congress could have resolved the matter by forbidding the examining psychiatrist from testifying at the trial on the merits, but it did not do so. (United States v. Mattson, *supra*, 469 F.2d 1234.) It chose instead to frame the limitation in terms of statements made by the accused. If the examining psychiatrist does not testify to the statements of the accused, his testimony is not foreclosed by section 4244. Moreover, the section does not prevent defense counsel from bringing out statements of the accused on cross-examination. Since the exclusion is for a defendant's benefit, he can waive it. Defense counsel may decide to forgo exploration of the statements because he believes that the disclosures would hurt his case, but that election is a matter of trial tactics, not a matter of statutory command.

■ However, we agree with Malcolm that the section 4244 limitation upon the use of an accused's statements to the examining psychiatrist is not eliminated when the only factual issue in the trial on the merits is defendant's sanity at

---

trier of the facts with the information essential for a proper determination of criminal responsibility. In addition to the psychological and neurological tests which may be indicated, that determination requires adequate knowledge and a proper expert evaluation of the accused's personal history and the circumstances surrounding the crime." Winn v. United States, *supra*, 270 F.2d at 328 (citations omitted).

    This segment of *Winn* was quoted with approval in *Driscoll*, *supra*, 399 F.2d at 138, with which observations the dissenter in *Driscoll* agreed, *id.* at 140.

6.  We do not reach the question whether the court's *sua sponte* exercise of its inherent power to issue a pretrial order compelling a defendant to submit to a

psychiatric examination to ascertain sanity at the time of the offense is an abuse of discretion because the point was not raised below, and it is raised only tangentially on appeal.

7.  Other alternatives founder on the impracticability of fragmenting a dual purpose interview or the impropriety of our ignoring manifest congressional intent.

8.  The second limitation of § 4244 is not in issue here: "A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury."

the time of the offense. Competence to stand trial does not go to the guilt of an accused, but sanity at the time of the offense is one of the components of guilt when it involves a particular state of mind which is an essential element of the offense charged or when, under the applicable test for mental responsibility, insanity provides exoneration from the crime charged. When a psychiatrist, who conducted a section 4244 examination, testifies for the Government on the sanity issue at trial on the merits, he is testifying "against the accused on the issue of guilt in any criminal proceeding"; accordingly, he cannot testify on direct examination to statements that the accused made to him during the course of his psychiatric examination.

■ We also agree with Malcolm that the section 4244 restrictions do not evaporate when a defendant has requested such an examination or when he has received an independent psychiatric examination on the insanity issue. The statute expressly states that the restrictions apply even though the accused consented to the examination. The receipt of an independent psychiatric examination on the sanity question may provide the foundation for a claim of waiver of his right against self-incrimination, asserted to thwart a Government motion that he submit himself to its expert to examine him on the sanity issue. It has no effect, however, upon the congressional directive in section 4244. A waiver of the exclusionary rule of section 4244 cannot be based solely on the act of an accused in obtaining a psychiatric examination for a very different purpose (sanity at the time of the offense) than that encompassed by section 4244 (competency to stand trial).

■■ An appropriate basis for finding a valid waiver is here presented. By the time Dr. Abe testified on rebuttal, Malcolm himself had testified and had introduced the testimony of his examining psychiatrist on the sanity issue. Dr. Abe did not testify to anything that Malcolm told him during the examination. Under these circumstances, the section 4244 exclusionary rule was not infringed and no basis exists for challenging the district court's ruling as an abuse of the court's inherent discretionary power.

### III.

■ Defense counsel was understandably disturbed by the district court's frequent interruptions of his interrogation of witnesses and of his interruption of his closing argument. The court often intervened in the prosecution's case as well. The trial court is, of course, more than an umpire. It properly participates in the examining of witnesses for the purpose, among others, of clarifying the evidence, controlling the orderly presentation of the evidence, confining counsel to evidentiary rulings, and preventing undue repetition of testimony. The trial court's role is especially sensitive in a jury trial. It must be ever mindful to eschew advocacy or the appearance of advocacy.[9] (*E.g.*, Blunt

9. Canon 15 of the American Bar Association's Canons of Judicial Ethics provides that:
   "A judge may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear up some obscurity, but he should bear in mind that his undue interference, impatience, or participation in the examination of witnesses, or a severe attitude on his part toward witnesses, especially those who are excited or terrified by the unusual circumstances of a trial, may tend to prevent the proper presentation of the cause, or the ascertainment of the truth in respect thereto.

   "Conversation between the judge and counsel in court is often necessary, but the judge should be studious to avoid controversies which are apt to obscure the merits of the dispute between litigants and lead to its unjust disposition. In addressing counsel, litigants, or witnesses, he should avoid a controversial manner or tone.

   "He should avoid interruptions of counsel in their arguments except to clarify his mind as to their positions, and he should not be tempted to the unnecessary display of learning or a premature judgment."

v. United States (1957), 100 U.S.App.D. C. 266, 244 F.2d 355, 363–366.) We have examined the entire record to determine whether, as Malcolm claims, the district court overstepped the bounds of acceptable trial conduct. Although from our vantage point of hindsight we can see that a greater reluctance quickly to intervene at times may have been warranted, we conclude that the conduct of the district court fell short of Malcolm's appellate mark.

We decline to reach the claimed error in instructing the jury. Defense counsel initially acquiesced in the instruction. His protest after the jury was instructed came too late. Rule 30, Fed.R.Crim.Proc., applies.

Affirmed.