**UNITED STATES, Appellee,**

v.

**Private E-2 Wendell L. MATTHEWS, SSN 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, United States Army, Appellant.**

**SPCM 16642.**

U. S. Army Court of Military Review.

31 Aug. 1982.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Raymond C. Ruppert, JAGC, Major Joyce E. Peters, JAGC, and Captain James A. McAtamney, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, Major Michael L. De-Busk, JAGC, and Captain Peter M. Donawick, JAGC, were on the pleadings for appellee.

Before MILLER, KUCERA and BADA-MI, Appellate Military Judges.

## OPINION OF THE COURT

KUCERA, Judge:

The appellant was convicted by a special court-martial composed of officer and enlisted members of wrongful possession of marihuana and, by substitutions and exceptions, of simple assault (two specifications) in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934 (1976). The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement at hard labor for three months, forfeiture of $334.00 pay per month for three months, and reduction to the grade of Private E–1.

The issue is whether the military judge erred by permitting the Government to produce expert psychiatric evidence in rebuttal to appellant's insanity defense raised solely by defense lay testimony. We affirm.

Prior to the date giving rise to the instant charges, the appellant was referred for clinical evaluation to Womack Army Hospital at Fort Bragg, North Carolina. Apparently, he was being considered for administrative elimination because of repeated acts of misconduct in his unit. Coincident with his arrival at the hospital on 9 February 1981, the appellant exhibited "inappropriate behavior, such as chasing people around . . . with a crowbar saying that they are the First Sergeant." This behavior was the subject of one of the charges.

At the hospital, the appellant was observed by a psychiatrist, Dr. Smith. His initial diagnosis was that the appellant suffered from a personality disorder not tantamount to a mental disease or defect. On 18 February 1981 the appellant was transferred to Walter Reed Army Hospital for further clinical observation. He was diagnosed there as having an "[a]ntisocial and paranoid psychological personality disorder."

While packing his personal belongings in preparation for the transfer to Walter Reed, appellant was observed to place a

clear plastic bag of marihuana in his duffle bag. This too was the subject of one of the charges. The incident giving rise to the remaining assault charge occurred after the appellant returned to his unit on 26 March 1981.

On 3 April 1981 Dr. Smith again saw the appellant. Dr. Smith prepared a Mental Status Evaluation, Department of the Army Form 3822–R, reflecting that the appellant was being considered for an administrative discharge for misconduct, that the appellant had a "paranoid personality disorder," and that the appellant "was mentally responsible."

On 7 April 1981 charges were preferred against the appellant. On 14 May, upon request by defense counsel for a psychiatric evaluation, Dr. Smith conducted another evaluation. Appellant was again diagnosed as suffering from an "antisocial personality disorder," but was found both competent to stand trial and mentally responsible at the time of the offenses.

At his trial the appellant relied on the defense of insanity calling several lay witnesses and the appellant to raise the issue of appellant's lack of mental responsibility at the time of the offenses. When the Government called Dr. Smith as a rebuttal witness on the issue of appellant's mental condition, the defense objected, contending that Rule 302, Military Rules of Evidence, precludes the Government from relying upon expert witnesses to rebut the insanity defense when the defense is raised solely by the lay testimony of defense witnesses. The military judge overruled the objection.

■ Mil.R.Evid. 302 provides in part:

(a) *General rule.* The accused has a privilege to prevent any statement made by the accused at a mental examination *ordered under paragraph 121 of this Manual* and any derivative evidence obtained through use of such a statement from being received into evidence against the accused on the issue of guilt or innocence or during sentencing proceedings. This privilege may be claimed by the accused notwithstanding the fact that the accused may have been warned of the rights pro-vided by rule 305 at the examination. (Emphasis added.)

The appellant concedes that the language of Mil.R.Evid. 302, by its own terms, specifically limits the privilege of the rule to mental examinations compelled under paragraph 121, Manual for Courts-Martial, United States, 1969 (Revised edition). That the drafters intended this narrow limitation is clear,

> As the purpose of the revision of paragraph 121 and the creation of Rule 302 is purely to protect the privilege against self-incrimination of an accused undergoing a mental examination related to a criminal case, both paragraph 121 and Rule 302 are inapplicable to proceedings not involving criminal consequences.

Analysis of the Military Rules of Evidence, Rule 302, Manual for Courts-Martial, United States, 1969 (Revised edition) at A18–14. The commentators have similarly observed,

> The privilege of Rule 302 is limited by the fact that it does not protect statements by the accused at mental examinations other than a compelled Manual [paragraph] 121 examination.

Saltzburg, Schinasi, and Schlueter, Military Rules of Evidence Manual (1981) at 65.

Therefore, central to this case is whether the examination was compelled under paragraph 121 of the Manual.

Turning to the facts, it is clear that the appellant's referral to Dr. Smith was for the purpose of determining his fitness for administrative separation. At the time of the referral the appellant was not under charges, and, indeed, his referral to the hospital occurred before the incidents giving rise to the preferral of charges. The preferral of charges does not alter our conclusion in this case because the further proceedings were voluntarily entered into by the appellant and, at least in part, completed at the specific request of appellant's defense counsel. We conclude that the rule is not applicable to the case at bar and that Dr. Smith's testimony was properly admitted.

■ Even if the Rule were applicable, the same result would obtain. The general rule bars use of any statements made by the accused and "any derivative evidence obtained through use of such a statement."

Paragraph (b)(2) provides an exception:

(2) An expert witness for the prosecution may testify as to the reasons for the expert's conclusions and the reasons therefor as to the mental state of the accused *if expert testimony offered by the defense as to the mental condition of the accused has been received in evidence,* but such testimony may not extend to statements of the accused except as provided in (1). (Emphasis added.)

The commentators have suggested that where Mil.R.Evid. 302 is applicable, the prosecution is permitted use of experts only after the defense has used its experts. Should that be so, following an adverse finding of sanity under paragraph 121, the defense would be able to rely on lay testimony and block expert rebuttal by the Government. *Saltzburg, supra* at 65. This would apparently bar use of a psychiatrist's conclusions as to the appellant's sanity, as well as, statements made by the appellant. In our view, such an interpretation is unwarranted. The purpose of the Rule is to protect an accused's right against self-incrimination. In this regard the federal courts have drawn a sharp distinction between the use of the results of compulsory psychiatric examinations on the issue of insanity and the use of an incriminatory statement made during a compulsory examination on the issue of guilt. The former is permissible; the latter is constitutionally forbidden. *United States v. Bennett,* 460 F.2d 872, 878–80 (D.C.Cir.1972); *Thornton v. Corcoran,* 132 U.S.App.D.C. 232, 236–238, 407 F.2d 695, 699–701 (1969); *United States v. Driscoll,* 399 F.2d 135, 139, 141 (2d Cir. 1968); *United States v. Alvarez,* 519 F.2d 1036, 1042 (3d Cir. 1975); *United States ex rel. Smith v. Yeager,* 451 F.2d 164, 165 (3d Cir.), *cert. denied,* 404 U.S. 859, 92 S.Ct. 112, 30 L.Ed.2d 101 (1971); *United States v. Albright,* 388 F.2d 719 (4th Cir. 1968); *United States v. Williams,* 456 F.2d 217, 218 (5th Cir. 1972); *United States v. Bohle,* 445 F.2d 54, 66–67 (7th Cir. 1971); *United States v. Reifsteck,* 535 F.2d 1030, 1034 (8th Cir. 1976); *United States v. Julian,* 469 F.2d 371, 376 (10th Cir. 1972). A similar interpretation is engrafted in Rule 12.2 of the Federal Rules of Criminal Procedure. *See United States v. Leonard,* 609 F.2d 1163 (5th Cir. 1980). This is also consistent with military case law prior to adoption of Rule 302. *United States v. Babbidge,* 18 U.S.C. M.A. 327, 40 C.M.R. 39 (1969). We believe a similar interpretation was intended by the drafters of the military rule and construe the proscription against the use of statements and any "derivative evidence obtained through the use of such a statement" to pertain to facts concerning an accused's participation in the criminal acts charged and not a psychiatrist's opinion regarding whether an accused possesses the requisite mental responsibility. This interpretation is a sensible one. To hold otherwise would result in concealing from the fact finders otherwise relevant and admissible evidence and require the Government to rely on lay witnesses of its own or the hypothecating conjectures of expert psychiatrists who have only observed the accused from afar.

In the case at bar Dr. Smith's testimony was carefully tailored to his observations and conclusions regarding the appellant's mental responsibility at the time of the offenses. He did not testify as to any statements made by the appellant pertaining to the criminal acts charged. Thus, his testimony did not violate any constitutional principles, nor in our view, violate the stricture of Rule 302 barring use of an accused's statements and derivative evidence therefrom.

The findings of guilty and the sentence are affirmed.

Senior Judge MILLER and Judge BADAMI concur.